IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SARAH COX                                                                        PLAINTIFF

v.                                    Case No. 4:05-CV-001254 WRW

UNIVERSITY OF ARKANSAS, a subordinate entity of the
State of Arkansas;
B. ALAN SUGG, President of the University of Arkansas,
in his official and individual capacities;
JOHN A. WHITE, Chancellor of the University of Arkansas,
in his official and individual capacities;
MARK CORY, Professor of the University of Arkansas,
in his official and individual capacities; and various
JOHN DOES of the University of Arkansas, policy makers, supervisors,
employees, and/or agents, in their official and individual capacities
                                                                                 DEFENDANTS

## STATEMENT OF MATERIAL FACTS FOR WHICH
## THERE IS NO GENUINE ISSUE TO BE TRIED

COME SEPARATE DEFENDANTS University of Arkansas ("University"),

B. Alan Sugg ("Dr. Sugg"), John A. White ("Dr. White") and "John Doe"

defendants, by and through their undersigned counsel, and in support of their

Alternative Motion for Summary Judgment submit the following Statement of

Material Facts for Which There is No Genuine Issue to be Tried, pursuant to

Local Rule 56.1.

1.  Plaintiff Sarah Cox ("Plaintiff" or "Ms. Cox") never reported any alleged

sexual harassment by former Professor Mark Cory to the President of the

University of Arkansas, B. Alan Sugg.  Further, Dr. Sugg was unaware of any

alleged sexual harassment of any students by Dr. Cory at any point prior to the

approximate time at which Dr. Cory resigned from the University.

2.  Plaintiff never reported any alleged sexual harassment by former

Professor Mark Cory to the Chancellor of the University of Arkansas, Fayetteville, John A. White.  Further, Dr. White was unaware of any alleged sexual harassment of any students by Dr. Cory at any point prior to the approximate time at which Dr. Cory resigned from the University.

3.  Kathryn M. Fairchild ("Ms. Fairchild") serves as the Assistant Director of the Office of Affirmative Action at the University of Arkansas, Fayetteville. During approximately the last 19 years, she has also served as the University's Grievance Officer.  She also serves as UAF's Title IX Coordinator and its Americans with Disabilities Act Coordinator.  Ms. Fairchild is responsible for investigating any allegations of discrimination, including, but not limited to gender discrimination and sexual harassment.

4.  Since at least 1994, the University has maintained and enforced a policy prohibiting sexual harassment.

5.  The University's sexual harassment policy applies to faculty, staff and students and is published each year in multiple locations, including the Faculty Handbook, the Staff Handbook, the undergraduate Student Handbook, and the Graduate Student Handbook, including the versions of these publications which were in force during the 2003-2004 academic year.  Each of these publications is readily available to all members of the University community on the University's web site.  In addition, the University's policy prohibiting sexual harassment is available on the Office of Affirmative Action web site.

6.  Each year, the University's Office of Affirmative Action conducts training sessions with administrators, deans, department heads, faculty, staff and students (primarily graduate students with teaching responsibilities) regarding the University's policy against sexual harassment.  In addition, the Office of Affirmative Action and the Office of the General Counsel provide training sessions for deans, department heads, program directors, and related administrators, which include training on sexual harassment; attendees are advised to review the University's sexual harassment policy with all faculty and staff.  Additional training activities and resource materials regarding sexual harassment are offered by the University's Office of Human Resources.

7.  On April 16, 2004, Ms. Fairchild was contacted by the University's Office of Student Affairs; Student Affairs had been contacted by the father of a female undergraduate student regarding an alleged charge of sexual harassment by Professor Mark Cory.  Ms. Fairchild spoke with that student's father by phone the same day, April 16, 2004.

8.  The father advised Ms. Fairchild that his daughter and at least four other students were alleging sexual harassment against Dr. Cory.  He was certain that his daughter wished to make a formal complaint but that neither he nor she could speak for the other students.  The father stated that his daughter would speak with Ms. Fairchild, but insisted that it not be until after her last test at the end of the semester.  The father did not provide Ms. Fairchild with specifics regarding his daughter's allegations.  Ms. Fairchild advised the father that she wanted to meet with his daughter immediately in an effort to avoid the possibility

of any further alleged misconduct from occurring.  The father stated that he understood but reiterated his daughter's request to postpone the meeting with Ms. Fairchild until the end of the semester.  The father agreed with Ms. Fairchild that his daughter would contact Ms. Fairchild on May 10, 2004.

9.  The father informed Ms. Fairchild that the other young women were reluctant to come forward but that his daughter was attempting to convince them to do so.  Ms. Fairchild admonished the father regarding the possibility of further alleged misbehavior and asked him to have his daughter and the others call her office or the Office of the Dean of Students if there was a need; the father told Ms. Fairchild he would.  The father did not provide Ms. Fairchild with the names of the other students.

10.  On May 10, 2004, Ms. Fairchild attempted to contact the daughter.  The student then contacted Ms. Fairchild and they made an appointment to meet on May 12, 2004.  During May 10-12, 2004, Ms. Fairchild informed Dean Bobbitt about the allegations and that she planned to meet with the daughter on May 12, 2004.

11.  On the morning of May 12, 2004, Ms. Fairchild met with the daughter.  The student related her allegations as well as the allegations of the other women she was aware of at the time.  The student was reluctant and would not provide the names of the other students, but Ms. Fairchild urged her to have the other students contact her as soon as possible.  Based on Ms. Fairchild's discussions with the student's father and with the student, Ms. Fairchild was aware that there were five students who knew of each other's experiences with Dr. Cory, including

4

the student with whom Ms. Fairchild initially met and another student whom Ms.

Ms. Fairchild later learned was named Sarah Cox.  None of the students,

however, came forward to report any alleged inappropriate behavior regarding

Dr. Cory prior to Ms. Fairchild's meeting with the initial student on May 12, 2004.

12.  Later on the morning of May 12, 2004, very shortly after Ms.

Fairchild's meeting with the initial student ended, Sarah Cox contacted Ms.

Fairchild for the first time.  Ms. Fairchild scheduled an appointment with Ms. Cox

for that same morning and then met with Ms. Cox at Ms. Fairchild's office.

During that meeting, Ms. Cox related her allegations against Professor Cory.

This meeting marked the first time that Ms. Cox ever notified any University

official with authority to take corrective action of any allegations of sexual

harassment concerning Dr. Cory.

13.  During Ms. Fairchild's meeting with Ms. Cox on May 12, 2004, Ms.

Cox advised Ms. Fairchild that the following incident had occurred during the fall

of 2003: Professor Cory had invited Ms. Cox to his home to work on a one-page

abstract.  After working on the abstract for a time, the two went for a walk in a

nearby park.  On a bridge at the park, Dr. Cory kissed Ms. Cox and

complimented her on her hair.  They walked back to the house and Dr. Cory

offered her coffee and they looked at pictures.  Dr. Cory continued to make

overtures and then picked up Ms. Cox and took her to the bedroom.  Dr. Cory

undressed Ms. Cox and undressed himself, and they got into bed together.  Ms.

Cox indicated that the encounter had been consensual up to that point.  Dr. Cory

then went to the bathroom to obtain a condom, at which point Ms. Cox decided

that she did not want to follow through and engage in sex with Dr. Cory, and told him so. After further conversation, during which Dr. Cory made other overtures of a sexual nature, Ms. Cox got up and put on her clothes and indicated that she was going to leave. Dr. Cory was upset. Ms. Cox stated that Dr. Cory hugged her and put his hand on her breast, at which point Ms. Cox departed.

14.   Ms. Cox also reported receiving a subsequent e-mail message from Dr. Cory to Ms. Cox and that she had some meetings in Dr. Cory's office which made her feel uncomfortable, including one in which Dr. Cory had given Ms. Cox a lengthy hug. Ms. Cox reported to Ms. Fairchild that Dr. Cory had suggested that he and Ms. Cox go away for a weekend together, and Ms. Cox had declined.

15.   During the meeting, Ms. Fairchild questioned Ms. Cox on why she hadn't reported Dr. Cory's behavior to anyone previously. In response, Ms. Cox indicated to Ms. Fairchild that men reacted to her in this way all the time. Furthermore, at some point Ms. Cox indicated to Ms. Fairchild that she was an adult woman and could do what she wanted to with her body.

16.   Towards the end of the meeting with Ms. Cox, Ms. Fairchild advised Ms. Cox that she was looking into other complaints against Dr. Cory which the initial student had brought to her attention. Prior to receiving the initial student's complaint, Ms. Fairchild had never received any student complaints of sexual harassment against Dr. Cory.

17.   On May 12, 2004, the father of the student with whom Ms. Fairchild had first met faxed Ms. Fairchild a copy of a statement that his daughter had made in the presence of an attorney regarding her allegations against Dr. Cory.

Although the statement was dated January 21, 2004, it was not furnished to Ms. Fairchild until May 12, 2004.

18.  During May 12-17, 2004, Ms. Fairchild communicated with Dean Donald Bobbitt and Provost Bob Smith about the allegations against Dr. Cory. Neither Dean Bobbitt nor Dr. Smith had any awareness of the alleged harassment prior to Ms. Fairchild's communication.

19.  On May 18, 2004, Ms. Fairchild and Dr. Smith met with Dr. Cory. During that meeting, Ms. Fairchild advised Dr. Cory of the charges that had been made by the first student with whom she initially met and Sarah Cox.  Dr. Cory was advised that he could voluntarily resign from his position or Provost Smith would initiate proceedings to revoke his tenure and terminate his employment. Dr. Cory informed Ms. Fairchild  and Dr. Smith that he would resign from the University.

20.  During the meeting with Dr. Cory and Dr. Smith, Ms. Fairchild and Dr. Smith instructed Dr. Cory to avoid any contact with students.  Ms. Fairchild  and Dr. Smith also informed Dr. Cory that he would not be permitted to co-lead an upcoming overseas student trip.

21.  The day after the meeting with Ms. Fairchild and Dr. Smith, May 19, 2004, Dr. Cory submitted his letter of resignation, relinquishing his tenure rights, to become effective June 30, 2004.  The University accepted Dr. Cory's letter of resignation, pursuant to University policy, on May 20, 2004.  Accordingly, within eight days after Ms. Fairchild's  meetings with the initial student and Ms. Cox, Dr. Cory had resigned his tenured position with the University.

22.   On May 21, 2004, Dr. Smith wrote Dr. Cory to outline the conditions of Dr. Cory's employment through the effective date of his resignation.  Dr. Cory was directed not to have any contact with any current or former students with whom he had had a personal relationship of any type or with whom he had sought to initiate such a relationship.  Dr. Smith directed Dr. Cory that, post-employment, he must not seek or accept any employment or volunteer role that would place Dr. Cory in contact with University of Arkansas students.

23.   On May 21, 2004, Ms. Fairchild renewed her efforts to obtain the names of other alleged victims from the student with whom she had initially met. On May 24 and 25, 2005, Ms. Fairchild met with three other students who had complaints regarding Dr. Cory.

24.   In late May, 2004, Dean Don Bobbitt and others took steps to find alternate advisors and to take other steps to assist the students who had complained about Dr. Cory, including, but not limited to, Ms. Cox.

25.   During the interim period between the date Dr. Cory submitted his resignation and the date the resignation became effective, Dr. Cory was required to clean out his office and take other necessary steps to wind up his duties at the University.  During that period, he was required to come to Ms. Fairchild's office each Friday to submit documentation on any contacts he had with his former students.  Dr. Cory was permitted to communicate with students only for the purpose of helping them transfer to other advisors, or to facilitate the closure of any academic matters, or in response to being contacted by students.

26.  The University continues to publish, enforce, and educate its administrators, faculty, staff and students (primarily graduate students) regarding its policies prohibiting sexual harassment at the present time.

By: /s/ T. Scott Varady_____
   T. SCOTT VARADY
   Arkansas Bar No. 93172
   WILLIAM R. KINCAID
   Ark. Bar No. 93125
   Associate General Counsel
   University of Arkansas
   421 Administration Building
   Fayetteville AR 72701
   Phone: 479-575-5401
   E-mail: svarady@uark.edu

   COUNSEL FOR SEPARATE
   DEFENDANTS UNIVERSITY OF
   ARKANSAS   B. ALAN SUGG,
   AND JOHN A. WHITE

<u>**CERTIFICATE OF SERVICE**</u>

I, T. Scott Varady, hereby certify that on this 2nd day of December, 2005, I have electronically filed with the Clerk of the Court by CM/ECF a true and correct copy of the foregoing document which will electronically send notification and a copy of such filing to the following listed counsel:

KATHLYN GRAVES
Arkansas Bar No. 76045
MITCHESS, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue,
Suite 1800
Little Rock, AR  72201\
Phone: 501-688-8800
E-mail: kgraves@mwsgw.com
COUNSEL FOR SEPARATE DEFENDANT MARK CORY

ROBERT L. DEPPER, JR.
DEPPER LAW FIRM
314 East Oak
El Dorado, AR  71730
Phone: 870-862-5505
e-mail: bdepper@cox-internet.com
COUNSEL FOR PLAINTIFF SARAH COX

WM. C. PLOUFFE, JR.
ATTORNEY & COUNSELOR AT LAW
211 N. Washington Street, No. 107
P.O. Box 1537
El Dorado, AR  71731-1537
Phone: 870-864-9930
e-mail: Plouffelaw@lawyer.com
COUNSEL FOR PLAINTIFF SARAH COX

By:     /s/ T. Scott Varady
        T. SCOTT VARADY
        Arkansas Bar No. 93172
        WILLIAM R. KINCAID
        Ark. Bar No. 93125
        Associate General Counsel
        University of Arkansas
        421 Administration Building
        Fayetteville AR 72701
        Phone: 479-575-5401
        E-mail: svarady@uark.edu

COUNSEL FOR SEPARATE
DEFENDANTS UNIVERSITY OF
ARKANSAS   B. ALAN SUGG,
AND JOHN A. WHITE