IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

SARAH COX                                                    PLAINTIFF

v.                          Case No. 4-05-CV00001254 WRW

UNIVERSITY OF ARKANSAS, a subordinate entity of the
State of Arkansas;
B. ALAN SUGG, President of the University of Arkansas,
in his official and individual capacities;
JOHN A. WHITE, Chancellor of the University of Arkansas,
in his official and individual capacities;
MARK CORY, Professor of the University of Arkansas,
in his official and individual capacities; and various
JOHN DOES of the University of Arkansas, policy makers,
supervisors, employees, and/or agents, in their official
and individual capacities,                                    DEFENDANTS

**BRIEF IN SUPPORT OF MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME SEPARATE DEFENDANTS, University of Arkansas ("University"), B. Alan

Sugg, John A. White, and John Does, each in his or her official and individuals

capacities, acting through their undersigned counsel, and submit this Brief in support of

their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

**I.
FACTS**

On September 2, 2005, Sarah Cox ("Plaintiff"), filed a Complaint against the

University, its President, B. Alan Sugg ("Dr. Sugg""), the Chancellor of the University of

Arkansas, Fayetteville ("UAF"), John A. White ("Dr. White"), a former professor, Mark

Cory ("Dr. Cory"), and "various" unnamed John Does.  Prior to serving the Complaint,

Plaintiff filed a First Amendment to Complaint ("Amended Complaint") which modified

the style of the case to correct a typographical error with respect to the spelling of Dr.

Cory's name.  Plaintiff did not restate each of the allegations in the Complaint in the
Amended Complaint.  Accordingly, in reviewing Plaintiff's allegations, the Defendants
will refer to the allegations in the Complaint.

In her Complaint, Plaintiff alleges that she enrolled at the UAF in the fall, 2000,
and took a class from Separate Defendant Cory each semester during the fall, 2000,
spring, 2001, and spring, 2002.  During her junior year in 2002-2003, Plaintiff studied
abroad in France "under the auspices of the European Studies Program." (Compl. ¶
17.)  The Complaint notably lacks any allegations of wrongdoing during Plaintiff's first
three academic years at the UAF.

At the outset of Plaintiff's fourth year at the UAF in the fall, 2003, Plaintiff alleges
that she met with Dr. Cory at "his house, alone, ostensibly to write a summary of her trip
[to France] and a grant proposal." (*Id.* ¶ 18.)  The Complaint then alleges that "[a]fter
the dinner," Dr. Cory "made a number of verbal and physical overtures of a sexual
nature" and "kissed" Plaintiff. (*Id.*)  Plaintiff alleges that "she resisted and refused to
engage in sex" and that Dr. Cory "removed [her] clothing" and "held [her] down on his
bed" at one point. (*Id.*)  Finally, Plaintiff alleges that Dr. Cory "stated he just wanted sex
from Cox for the next year and then they could go their separate ways." (*Id.*)

As stated, Plaintiff alleges that she spent her junior year, which would have been
2002-2003, abroad in France.  Nevertheless, Plaintiff alleges that during the fall, 2002,
Dr. Cory attempted to contact her and met with her twice. (*Id.* ¶ 19.)  Plaintiff contends
the two meetings were "emotionally distressing" to her. (*Id.*)

Plaintiff alleges that she "reported the incidents to the University of Arkansas
officials" without identifying the "officials" to whom she made such reports. (*Id.* ¶ 20.)

2

Plaintiff further asserts that she "was told that Cory had engaged in this type of behavior with a number of other students in the past" and that Plaintiff "is not aware of any formal discipline taken against Cory for his actions." (*Id.*)  Plaintiff further contends that due to Dr. Cory's "inappropriate behavior, [she] became severely depressed and had to drop out of college" which "damaged [her] financially" and "delayed her education." (*Id.* ¶ 21.)

Plaintiff next makes several allegations "upon information and belief," including that Dr. Cory engaged in similar conduct "with other female students at the University of Arkansas over the years," that "the University of Arkansas knew of Cory's continuing activities and did not investigate, discipline and/or stop Cory," and that the "University of Arkansas had and has policies and/or customs that tolerated, approved, condoned, and/or allowed such behavior by Cory." (*Id.* ¶¶ 22-24.)  Finally, Plaintiff alleges that "[a]s a direct and indirect result of the Defendants' acts and omissions, [she] suffered financial damage, educational delay, humiliation, shame, embarrassment, and her reputation was injured" along with "emotional and mental distress and anguish." (*Id.* ¶ 25.)  She also alleges that she "suffered damages as a result of the violation of her federal and state constitutional rights. (*Id.*)

Based upon these allegations, Plaintiff asserts the following federal and state law claims:

Count I:      Violation of the Right of Association; First, Ninth &
              Fourteenth Amendments to the United States Constitution
              ("Count I");

Count II:     Sexual Harassment & Discrimination; Equal Protection &
              Due Process; Ninth & Fourteenth Amendments to the United
              States Constitution ("Count II");

Count III:     Sexual Harassment & Discrimination; Title IX of the
               Education Amendments, 20 U.S.C. §§ 1681-86 ("Count III");

Count IV:      Failure to Come to the Aid, 42 U.S.C. § 1983 ("Count IV");

Count V:       Failure to Properly Train, 42 U.S.C. § 1983 ("Count V");

Count VI:      Failure to Investigate, Discipline, Correct or Supervise, 42
               U.S.C. § 1983 ("Count VI");

Count VII:     Approval and/or Ratification, 42 U.S.C. § 1983 ("Count VII");

Count VIII:    Failure to Create/Maintain Proper Formal Policies &
               Procedures, 42 U.S.C. § 1983 ("Count VIII");

Count IX:      Inadequate Policies, Procedures, Customs & Usages, 42
               U.S.C. § 1983 ("Count IX");

Count X:       Conspiracy, 42 U.S.C § 1985 ("Count X");

Count XI:      Sexual Harassment & Discrimination; Equal Protection &
               Due Process; Article II, §§ 3, 13, 18, 21, and 29 of the
               Arkansas Constitution ("Count XI");

Count XII:     Sexual Harassment & Discrimination, Ark. Code Ann. § 16-
               123-105 ("Count XII");

Count XIII:    Tort of Outrage ("Count XIII");

Count XIV:     Tort of Battery ("Count XIV");

Count XV:      Tort of Sexual Abuse ("Count XV"); and

Count XVI:     Breach of Fiduciary Duty ("Count XVI").

The case caption and the paragraphs identifying the parties appear to suggest

that all counts are asserted against Dr. Sugg, Dr. White, and the "John Doe" defendants

in both their official and individual capacities.  However, Counts XIII, XIV and XV

indicate that they are asserted solely against Dr. Cory.  With respect to **all** Defendants,

Plaintiff prays for $1,000,000 in compensatory damages and $1,000,000 in "[e]xemplary

and punitive damages." (*Id.* ¶¶ 75-76.)  Additionally, Plaintiff seeks equitable relief, including "an investigation and disciplinary action . . . to be taken against the responsible Defendants," ordering Defendants "to attend and complete adequate training to prevent a reoccurrence of this type of incident," and ordering Defendants "to create and maintain adequate policies and procedures to prevent a reoccurrence of this type of incident." (*Id.* ¶¶ 77-79.)  With respect to the equitable relief, however, Plaintiff only seeks such relief in regard to Counts V, VI, VIII and IX.  Plaintiff also seeks attorney's fees, costs, and expenses.

For all of the reasons herein set forth, Plaintiff's Complaint and Amended Complaint against the University, Dr. Sugg, and Dr. White should be dismissed.  In the alternative, this Court should enter summary judgment in favor of the University, Dr. Sugg, Dr. White, and the "John Doe" defendants.

## II.
## LEGAL DISCUSSION

### A.     STANDARDS OF REVIEW

#### 1.     Motions to Dismiss

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must review the complaint "in a light most favorable to the plaintiff and [it] should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations."  *Krentz v. Robertson Fire Protection Dist.*, 228 F.3d 897, 905 (8th Cir. 2000).  Accordingly, the Court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  *See Breedlove v. Earthgrains Baking Cos.,* 140 F.3d 797,

798 (8th Cir. 1998), *cert. denied*, 525 U.S. 921 (1998).  Dismissal is appropriate if "'it

appears beyond doubt that the plaintiff can prove no set of facts which would entitle him

to relief.'"  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (quoting

*Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).

The Court, however, must "reject conclusory allegations of law and unwarranted

inferences."  *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re*

*Syntex Corp. Secs. Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)).  *See also Westcott*, 901 F.2d

at 1488 (the court "do[es] not, however, blindly accept the legal conclusions drawn by

the pleader from the facts" (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12

(6th Cir. 1987) & 5 Charles Wright & Arthur Miller, FEDERAL PRACTICE AND

PROCEDURE § 1357 at 595-97 (1969))).  A motion to dismiss "can serve a useful

purpose in disposing of legal issues with the minimum of time and expense to the

interested parties."  *Sophapmysay v. City of Sergeant Bluff, Iowa*, 126 F. Supp. 2d

1180, 1186 (N.D. Iowa 2000) (quoting *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968,

973 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969)).  Accordingly, "[t]he issue is not

whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer

evidence in support of the plaintiff's claims."  *Sophapmysay*, 126 F. Supp. 2d at 1186.

2.      Motions for Summary Judgment

In describing the standard of review to be employed by district courts deciding

summary judgment motions, the Eighth Circuit has explained that a reviewing court

must determine:

> [W]hether there is a genuine issue of material fact and
> whether the moving party is entitled to judgment as a matter
> of law.  The standard requires determining both whether a

6

fact is "material" and whether the dispute over that fact is "genuine." Materiality is determined by the applicable substantive law. Material facts are those which might affect the outcome of the lawsuit. A dispute over an issue of fact is "genuine" if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue.

*DuBose v. Kelly*, 187 F.3d 999, 1000-01 (8th Cir. 1999).

**B. AS A MATTER OF LAW, THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BARS PLAINTIFF'S CLAIMS AGAINST THE UNIVERSITY AS WELL AS THE OFFICIAL CAPACITY DEFENDANTS**

1. The Eleventh Amendment Is A Jurisdictional Bar To Plaintiff's Suit

The Eleventh Amendment to the United States Constitution provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state. U.S. Const. amend. XI. The Eleventh Amendment presents a jurisdictional bar to any suit which is, in actuality, directed against the State, regardless of whether the action is nominally instituted against the State, a state agency or instrumentality, or a state official. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Florida Dept of State v. Treasure Salvors*, 458 U.S. 670 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1978). States and their agencies "retain their immunity against *all* suits in federal court" whether the claims are for damages or prospective equitable relief. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added). Thus, the Eleventh Amendment bars a suit against state officials or agencies when the State is the real, substantial party in interest.

7

In *Seminole Tribe of Florida v. Florida*, the Supreme Court explained: "For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"  517 U.S. 44, 54 (1996) (citation omitted).  The type of relief sought by a plaintiff is irrelevant to the Eleventh Amendment analysis:

> The Eleventh Amendment does not exist solely in order to prevent federal court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.

*Id.* at 58 (citations & quotations omitted).  *See also In re SDDS, Inc.*, 97 F.3d 1030, 1035 (8th Cir. 1996) ("The immunity recognized by the Eleventh Amendment extends to both suits for monetary damages and those for declaratory or injunctive relief.")

Under controlling Eighth Circuit precedent, the University of Arkansas is an instrumentality of the State of Arkansas entitled to Eleventh Amendment immunity. *Assaad-Faltas v. University of Ark. for Med. Sciences*, 708 F. Supp. 1026, 1029-30 (E.D. Ark. 1989), *aff'd* 902 F.2d 1572 (8th Cir. 1990).  In instances when a court has before it prior decisions adjudicating the question of a particular university's relationship with the state, it need only refer to the holdings of those decisions.  *Treleven v. University of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996).  Accordingly, the University is an instrumentality of the State of Arkansas which may invoke the Eleventh Amendment. *Assaad-Faltas*, 708 F. Supp. at 1029-30.

In this case, the Eleventh Amendment bars all of Plaintiff's federal and state law claims against the University, except for Plaintiff's Title IX claim which should be dismissed for the reasons herein detailed.  *See Florida Prepaid Postsecondary Educ.*

*Expense Bd. v. College Savings Banks*, 527 U.S. 627, 647 (1999) (holding that the

Patent and Plant Variety Protection Remedy Clarification Act, which expressed the

unmistakably clear intent of Congress to subject the States to liability for patent

infringement, could not be sustained as a valid exercise of congressional power

pursuant to Section V of the Fourteenth Amendment); *College Savings Bank v. Florida*

*Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (holding that Eleventh

Amendment not validly abrogated by the Trademark Remedy Clarification Act and state

entity's activities in interstate commerce did not constitute a waiver of sovereign

immunity); *Alden v. Maine*, 527 U.S. 706 (1999) (holding that principles of sovereign

immunity barring Federal claims against the States in Federal court equally apply to

Federal claims initiated against States in State court); *City of Boerne v. Flores*, 521 U.S.

507 (1997).

> 2.  The Eleventh Amendment Bars Section 1983 Claims Against All Official-
>     Capacity Defendants

"Suits against state officials in their official capacity . . . [are] treated as suits

against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Moreover, Section 1983

does not abrogate Defendants' Eleventh Amendment immunity.  *Quern v. Jordan*, 440

U.S. 332 (1979).  Likewise, the Eleventh Amendment bars jurisdiction of official-capacity

actions.  *See Will v. Michigan Dept of State Police*, 491 U.S. 58, 66-67 (1989) ("Section

1983 provides a federal forum to remedy many deprivations of civil liberties, but it does

not provide a federal forum for litigants who seek a remedy against a State for alleged

deprivation of civil liberties.  The Eleventh Amendment bars such suits unless the State

has waived its immunity.") (quotations & citation omitted); *Quern*, 440 U.S. at 338-40

(1979).  In this case, there is no waiver of immunity.  Therefore, the Eleventh

Amendment "prohibits federal-court lawsuits seeking monetary damages from individual

state officers in their official capacities because such lawsuits are essentially 'for the

recovery of money from the state.'"  *Treleven*, 73 F.3d at 818 (quoting *Ford Motor Co. v.

Department of the Treasury*, 323 U.S. 459, 464 (1945)).

3. State Entities and State Officials Are Not "Persons" Within the Meaning of
   Section 1983 and Section 1983 Liability May Not Be Premised on a Theory of
   *Respondeat Superior*

For purposes of Section 1983, Defendants, in their official capacities, are not

"persons" under Section 1983 against whom a suit can be sustained for money

damages.  *See Will*, 491 U.S. at 71; *Hafer*, 502 U.S. at 27 ( "State officers sued for

damages in their official capacity are not 'persons' [under Section 1983] for purposes of

[a] suit because they assume the identity of the government that employs them.")

Further, Section 1983 liability cannot be premised on a theory of *respondeat superior*.

*See Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978); *Artis v. Francis Howell

N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) ("A governmental

entity is not liable under § 1983 based on actions of its employees under a theory of

respondeat superior.").  Accordingly, Plaintiff's attempt to assert Section 1983 claims

against the University, Dr. Sugg, Dr. White, or any University "John Doe" defendants

based upon the alleged actions of Dr. Cory must fail.

4. The Eleventh Amendment Bars Plaintiff's Claims For Money Damages And
   Equitable Relief Against The University

Applying the foregoing legal principles to the claims asserted against the

University in this case, except for Count III (Sexual Harassment & Discrimination, Title

IX of the Education Amendments, 20 U.S.C. §§ 1681-86), all claims against the University are barred by the Eleventh Amendment, including Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII and XVI.  Specifically, Plaintiff expressly invokes 42 U.S.C. § 1983 to assert Counts IV, V, VI, VII, VIII and IX.  Although not expressly stated in the Complaint, Count I, alleging violations of the right of association under the First, Ninth, and Fourteenth Amendments, and Count II, alleging sexual harassment, discrimination, equal protection and due process violations under the Ninth & Fourteenth Amendments, must also be predicated on 42 U.S.C. § 1983.  Therefore, Plaintiff's Section 1983 claims against the University include Counts I, II, IV, V, VI, VII, VIII, IX and X and are barred by the Eleventh Amendment.  *Quern v. Jordan*, 440 U.S. 332 (1979).

Additionally, these same claims (Counts I, II, IV, V, VI, VII, VIII and IX) are also barred because the University is not a "person" within the meaning of Section 1983, and the Eleventh Amendment, therefore, precludes such claims.  *See Will*, 491 U.S. at 71; *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).  Further, Plaintiff's conspiracy claim under 42 U.S.C. § 1985 against the University (Count X) is barred by the Eleventh Amendment.  *Cohen v. State of Neb.*, 83 F. Supp. 2d 1042, 1046 (D. Neb. 2000).  Moreover, the Section 1983 claims asserted against the University in Counts I, II, IV, V, VI, VII, VIII, IX and X are impermissibly predicated on a theory of *respondeat superior* and barred by the Eleventh Amendment.  *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978); *S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025 (8th Cir. 2002) (school not liable under Section 1983 where minister who also volunteered in public schools sexually abused student at his home); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir. 1995) (claim involving sexual abuse of child by teacher cannot be

based solely on teacher's conduct, "for respondeat superior is not available as a theory

of recovery under section 1983").

Similar to the jurisdictional bar to her federal claims, the Eleventh Amendment

also bars Plaintiff's state law claims against the University.  Specifically, Count XI,

alleging sexual harassment and discrimination as well as equal protection and due

process violations under the Arkansas Constitution and the Arkansas Civil Rights Act

("ACRA"), and Count Count XII, alleging sexual harassment and discrimination under

the ACRA, and Count XVI, alleging breach of fiduciary duty, are all state law claims

which are barred by the Eleventh Amendment.  *Alden*, 527 U.S. at 745-46; *Seminole*

*Tribe*, 517 U.S. at 54.

In summary, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6),

Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII and XVI against the University must be

dismissed because: (1) the Eleventh Amendment bars all federal and state law claims

(including all causes of action for money damages and injunctive relief), including

Plaintiff's Section 1983 claims as well as her conspiracy claim under Section 1985; (2)

the University is not a "person" within the meaning of Section 1983; and (3) the

University may not be held liable under a theory of *respondeat superior*.  Plaintiff's sole

remaining claim against the University, Count III (sexual harassment and discrimination

pursuant to Title IX), should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing

to state a claim as herein detailed.

5.  The Eleventh Amendment Bars Plaintiff's Federal And State Law Claims
    Against All Official-Capacity Defendants

As stated, the Eleventh Amendment bars jurisdiction of official-capacity actions. *See Will*, 491 U.S. at 66-67.  Accordingly, the foregoing Eleventh Amendment principles barring Plaintiff's claims against the University similarly apply to prohibit all of Plaintiff's claims, including Counts I through XVI, for money damages against each of the official-capacity Defendants, including Dr. Sugg, Dr. White, Dr. Cory, and the University "John Doe" defendants.  *See Treleven*, 73 F.3d at 818.  Plaintiff's claims against the individual defendants in their official capacities are nothing more than a suit against the University as a State instrumentality, and are, therefore, barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651 (1974).  In light of the fact that a claim for money damages against a state official is nothing more than a suit against the State entity itself, the University is the real party in interest and moves for the dismissal of all such official-capacity claims against Dr. Sugg, Dr. White, former professor and Separate Defendant Cory, and all "John Doe" defendants pursuant to the Eleventh Amendment.

As also explained, Section 1983 did not abrogate Eleventh Amendment immunity.  Moreover, none of the official-capacity defendants is a person within the meaning of Section 1983, and no liability may premised upon a theory of *respondeat superior*.  Moreover, Plaintiff's conspiracy claim in Count X fails because the official-capacity Defendants are not "persons" within the meaning of the statute, and the Eleventh Amendment bars that claim as well.  Additionally, all of Plaintiff's claims against Dr. Sugg, Dr. White, and the University "John Doe" defendants are improperly predicated on a theory of *respondeat superior* based upon the alleged conduct of Dr. Cory.  Accordingly, all of the official-capacity claims asserted against Dr. Sugg, Dr.

13

White, and the University "John Doe" defendants should be dismissed for these reasons as well.

### 6. As a Matter Of Law, a Title IX Claim May Only Be Asserted Against a Recipient of Federal Funds and Will Not Lie Against Individual Defendants

With respect to Plaintiff's Title IX claim (Count III) against the official-capacity defendants, the Eighth Circuit previously observed that "'[t]he fact that title IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients.'" *Kinman v. Omaha Pub. Sch. Dist*, 171 F.3d 607, 611 (8th Cir. 1999) (quoting *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1012 (5th Cir.), *cert. denied*, 519 U.S. 861 (1996)). Siding with numerous other Courts of Appeal, the Eighth Circuit concluded that "Title IX will not support an action" against individual-capacity defendants; therefore, Count III of the Complaint against Dr. Sugg, Dr. White, Dr. Cory and the University "John Doe" defendants in their individual capacities must be dismissed as a matter of law. *Kinman*, 171 F.3d at 611 (citing *Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir.), *vacated & remanded*, 525 U.S. 802 (1998); *Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014,1019 (7th Cir. 1997), *cert. denied*, 524 U.S. 951 (1998); *Lipsett v. University of P.R.*, 864 F.2d 881, 901 (1st Cir. 1988)).

In *Kinman*, the Eighth Circuit also approvingly cited *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 730 (6th Cir. 1996) (Nelson, J., concurring), for the proposition that "only educational institutions may be found liable for Title IX violations." *Kinman*, 171 F.3d at 611. Given that the Complaint alleges that only the University – not Dr. Sugg, Dr. White, Dr. Cory, and the "John Doe" defendants in their official

14

capacities – is the recipient of federal funds under Title IX, (Compl. ¶ 9), no official-capacity action may lie against any of these defendants as asserted in Count III.  *See id.*  Accordingly, the Title IX claim asserted in Count III against all official and individual capacity defendants should be dismissed as a matter of law.

7.   Plaintiff's Claims For Equitable Relief Against The Official-Capacity Defendants Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(6) And Because Plaintiff Lacks Standing And The Claims Are Moot

In Paragraphs 41, 44, 50 and 53 of her Complaint, Plaintiff sets forth four respective claims seeking equitable relief against the official-capacity Defendants which are Count V (Failure to Properly Train, 42 U.S.C. § 1983) seeking an order requiring "Defendants . . . to adequately train the Defendants who violated [Plaintiff's] rights," Count VI (Failure to Investigate, Discipline, Correct or Supervise, 42 U.S.C. § 1983) seeking an order requiring "Defendants . . . to investigate and discipline the Defendants who violated Cox's rights," and Count VIII (Failure to Create/Maintain Proper Formal Policies & Procedures, 42 U.S.C. § 1983) seeking an order requiring "Defendants . . . to enact adequate policies and procedures for the protection of the public, and Count IX (Inadequate Policies, Procedures, Customs and Usages, 42 U.S.C. § 1983) seeking an order requiring "Defendants . . . to enact adequate policies and procedures for the protection of the public."  None of Plaintiff's other claims contains a request for equitable relief and are thus barred against the official-capacity Defendants pursuant to the Eleventh Amendment.  Although actions for injunctive relief may generally be maintained against an official-capacity defendant under *Ex Parte Young*, 209 U.S. 123 (1908), no basis exists for permitting Plaintiff's actions to proceed in this case.

15

The Supreme Court recently explained that *Ex Parte Young* is not automatically applied in every case:

> To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer . . . would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe*, that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.  The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings.  Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997) (citations omitted).  "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157.  Here, Plaintiff fails to allege facts establishing any causal connection between Dr. Sugg, Dr. White, and the University "John Doe" defendants and each count in the Complaint seeking injunctive relief.  In this regard, Plaintiff is attempting to make the State a party rather than alleging a necessary causal connection between a state actor and some allegedly unlawful conduct as illustrated in other cases.

For example, in *Fitts v. McGhee*, 172 U.S. 516 (1899), a plaintiff challenged an act regulating bridge toll rates by suing a governor and attorney general for injunctive relief.  *Id.* at 518.  Ruling for the defendants, the Supreme Court held that neither the governor nor the attorney general "appears to have been charged by law with any

16

special duty in connection with the act."  *Id.* at 529.  Further, the fact that Dr. Sugg, Dr.

White, and the "John Doe" defendants may have a general duty to enforce state laws is

insufficient to substantiate the connection required under *Young.  See Shell Oil Co. v.

Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (governor's "general duty to enforce state laws

does not make him a proper defendant in every action attacking the constitutionality of a

state statute"); *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir.

1993) (same); *Weinstein v. Edgar*, 826 F. Supp. 1165, 1167 (N.D. Ill. 1993) (same).  In

this case, Plaintiff's Complaint and Amended Complaint are void of allegations

demonstrating that she is entitled to the relief requested.  For this reason alone,

Plaintiff's claims for injunctive relief fail.

Additionally, Plaintiff's claims for injunctive relief fail because, as a matter of law,

no basis in law exists for the underlying claim.  The Supreme Court previously stated

that "'in any § 1983 action the initial inquiry must focus on whether the two essential

elements to a § 1983 claim are present: (1) whether the conduct complained of was

committed by a person acting under color of state law; and (2) whether this conduct

deprived a person of rights, privileges, or immunities secured by the Constitution or laws

of the United States.'"  *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999) (quoting

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds sub nom.

Daniels v. Williams*, 474 U.S. 327 (1986)).  Here, Plaintiff is unable to satisfy either

requirement for obtaining the requested injunctive relief.

Although Plaintiff generically recites the words "under the color of law" in Counts

V, VI, VIII, and IX, she fails to allege facts identifying how each specific and unidentified

defendant misused his official authority to violate Plaintiff's constitutional rights.

Instead, Plaintiff repeats bare legal conclusions with no facts relating to Dr. Sugg, Dr.

White, or the University "John Doe" defendants.

In the context of a civil rights claim, the Sixth Circuit has recognized that a

complaint must assert more than bare legal conclusions to state a claim:

> [T]he standard of review of a dismissal of a complaint under
> Fed. R. Civ. P. 12(b)(6) is liberal. . . . It is plain that, although
> liberal, the standard does require that a plaintiff plead more
> than bare legal conclusions.  In practice, a . . . complaint
> must contain either direct or inferential allegations respecting
> all the material elements to sustain a recovery under *some*
> viable legal theory.  This court has held, in the context of a
> civil rights claim, that conclusory allegations of
> unconstitutional conduct with specific factual allegations fails
> to state a claim under section 1983.  Some factual basis for
> such claims must be set forth in the pleadings.

*Lillard*, 76 F.3d at 726 (quotations & citations omitted) (second alteration in original).  In

this regard, Plaintiff's claims for injunctive relief are legally deficient.  Moreover, those

claims fail because Plaintiff's basis for equitable relief are not grounded on a

constitutional right and thus fail to assert a "viable legal theory."

Plaintiff invokes Section 1983 in seeking equitable relief for the following alleged

violations: (1) "Failure to Properly Train"; (2) "Failure to Investigate, Discipline, Correct

or Supervise"; (3) "Failure to Create/Maintain Proper Formal Policies & Procedures; and

"Inadequate Policies, Procedures, Customs and usage."  Plaintiff, however, provides no

factual grounding for these legal assertions.  Even if she did, in *Gebser v. Lago Vista*

*Independent School District*, 524 U.S. 274, 291-92 (1998), the Supreme Court held that

a school district's alleged "failure to promulgate and publicize an effective policy and

grievance procedure for [student] sexual harassment claims" does not "constitute

'discrimination' under Title IX."  Thus, under *Gebser*, no basis exists for Plaintiff to

assert a private right of action for equitable relief, and all official-capacity claims against Dr. Sugg, Dr. White, and the University "John Doe" defendants for injunctive relief should be dismissed for failing to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

Independent of those grounds for dismissal of Plaintiff's claims for injunctive relief, the same claims should also be dismissed because, as a matter of law, a party must have a personal stake in the relief being sought to have standing in pursuing equitable relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Baker v. Carr*, 369 U.S. 186, 204 (1962).  As described below, here, Plaintiff lacks standing with respect to the equitable relief sought in Counts V, VI, VIII, and IX and her request for such relief is moot.  In undertaking a review of this basis for dismissing Plaintiff's claims for equitable relief, Fed. R. Civ. P. 12(b)(1) enables this Court to look beyond the pleadings to determine a party's standing.  *See Smith v. Washington Metro. Area Trans. Auth.*, 290 F.3d 201, 205 (4th Cir. ), *cert. denied,* 537 U.S. 950 (2002).

At all times relevant to this litigation, the undisputed facts show that: (1) the University maintained and enforced a policy prohibiting sexual harassment; (2) that the University's Office of Affirmative Action conducted training sessions with administrators, deans, department heads, faculty, staff, and students (primarily graduate students) regarding the University's policy against sexual harassment; (3) that the University's policies against sexual harassment were published in the *Faculty Handbook*, the *Staff Handbook*, the undergraduate *Catalog of Studies*, in the *Graduate School Handbook*, on the Office of Affirmative Action web site, and on the University's web site; (4) that the University – *not the Plaintiff* – initiated an investigation into a student complaint of

19

sexual harassment against Dr. Cory which led the University's investigator to contact the Plaintiff with the assistance of the student who lodged the initial complaint; (5) that the University immediately conducted an investigation into the original student's allegations as well as Plaintiff's allegations; (6) that within a period of less than one week after receiving the complaints of the original student and Plaintiff and as a result of the University's investigation, Dr. Cory was advised by University officials that he could resign (giving up his tenure) or that the Provost would initiate proceedings to terminate his employment and revoke his tenure; (7) that Dr. Cory submitted his resignation and relinquished his tenure rights within 24 hours after meeting with University officials; and (8) that the University continues to maintain, enforce, and educate administrators, faculty, staff and students (primarily graduate students) in regard to its policies prohibiting sexual harassment.  (Mot. to Dismiss Ex. 1.)

Based upon these facts, Plaintiff's request for an order directing all Defendants "to adequately train the Defendants who violated Cox's rights," "to investigate and discipline the Defendants who violated Cox's rights," and "to enact adequate policies and procedures for the protection of the public" are moot, and Plaintiff lacks standing with respect to each request.  The undisputed facts demonstrate that the University maintained and enforced policies prohibiting sexual harassment, that the University trained administrators, faculty, staff and graduate students, and that those policies and activities remain in effect today.  Further, Plaintiff's official-capacity claims for equitable relief against Dr. Cory are moot because he is no longer an employee of the University. Accordingly, the official-capacity actions against Dr. Sugg, Dr. White, Dr. Cory and the

University "John Doe" defendants for equitable relief under Counts V, VI and VIII should be dismissed.

In sum, Plaintiff's claims asserted against Dr. Sugg, Dr. White, Dr. Cory and the University "John Doe" defendants in their official-capacities in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV and XVI for money damages are barred by the Eleventh Amendment.  Similarly, Plaintiff's claims for equitable relief in Counts V, VI, VIII, and IX against all official-capacity defendants should be dismissed because (1) Plaintiff fails to state facts upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) with respect to her Section 1983 claims for such relief and (2) Plaintiff lacks standing and her request is moot.  Additionally, a Title IX action may not be asserted against Dr. Sugg, Dr. White and the University "John Doe" defendants in their individual capacities.  As the only Defendant alleged to be a recipient of federal funds, a Title IX action may only be asserted against the University as an entity and not any of the official-capacity defendants.

### C. AS A MATTER OF LAW, PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED WITH RESPECT TO THE UNIVERSITY, DR. SUGG, DR. WHITE AND THE "JOHN DOE" DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for the dismissal of a Complaint which fails to state a claim upon which relief may be granted.  In this case, Plaintiff's Complaint and Amended Complaint fail to allege sufficient facts to state a claim against the University, Dr. Sugg, Dr. White, and any University "John Doe" defendants.  Alternatively, these Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56 with respect to each of Plaintiff's claims.  Accordingly, Plaintiff may

not prevail on any claims against Dr. Sugg, Dr. White, and the "John Doe" defendants in their individual capacities.  The claims are addressed as follows.

1.      The Section 1983 Claims: Counts I, II, IV, V, VI, VII, VIII and IX

As detailed, the Eleventh Amendment bars all of Plaintiff's official-capacity claims against Dr. Sugg, Dr. White and the "John Doe" defendants.  Likewise, liability may not be imputed based upon a theory of *respondeat superior*.  With respect to her Section 1983 claims against these Defendants in their individual capacities, Plaintiff fails to state a claim upon which relief may be granted, or in the alternative, the Defendants are entitled to summary judgment.  In the first instance, all of the Section 1983 claims lack a factual basis to withstand dismissal.  No facts are alleged to meet the requirements that "the conduct complained of was committed by a person acting under color of state law" and that "this conduct deprived [Plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *DuBose*, 187 F.3d at, 1002. Significantly, Plaintiff fails to state facts establishing that Dr. Sugg, Dr. White or the "John Doe" defendants acted with deliberate indifference with respect to any claims. Specifically, to plead deliberate indifference, a plaintiff must assert facts establishing the following:

> That defendants established, through action or inaction, a policy, practice or custom;
>
> That the policy, practice or custom was established with deliberate or reckless indifference to the consequences;
>
> That the policy, practice or custom fostered a climate which facilitated [sexual misconduct]; and
>
> That the policy, practice or custom directly caused constitutional harm.

22

*Doe v. Board of Educ. of Hononegah Community High Sch. Dist. No. 207,* 833 F. Supp.

1366, 1379 (N.D. Ill. 1993).  Plaintiff fails to establish deliberate indifference and liability

may not be imposed if an official lacks knowledge of the alleged wrongful conduct or if

an appropriate response is taken, regardless of whether the response is ultimately

effective or ineffective. *See Gerber,* 524 U.S. at 290-91.  In regard to the Section 1983

claims, Plaintiff routinely fails to allege only  facts establishing these elements.  Instead,

Plaintiff relies upon cut-and-paste boilerplate legal conclusions.  Nevertheless, Plaintiff's

allegations are insufficient to state a claim upon which relief may be granted and should

be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In Count I, Plaintiff alleges that all Defendants violated her right "to freely

associate with other people at the University of Arkansas" in violation of her First, Ninth

and Fourteenth Amendment rights.  She fails to allege, however, what Dr. Sugg, Dr.

White or any of the "John Doe" defendants did or didn't do to visit constitutional harm

upon her.  Accordingly, this claim should be dismissed against each of these

Defendants in their individual capacities pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively, the Affidavit and Declarations attached to the Motion establish that

the University maintained, enforced, and educated administrators, faculty, staff and

students with respect to its policy prohibiting sexual harassment.  (Mot. To Dismiss Exs.

1, 2 & 3)  The Affidavit and Declarations, further establish that Plaintiff failed to report

the alleged harassment she claims to have suffered.  (*Id.*)  The Complaint *does not*

*allege* nor is there any evidence to support any allegation that Dr. Sugg, Dr. White or

any of the "John Doe" defendants were aware of any alleged sexual harassment with

23

regard to Plaintiff or any other unlawful activity preventing her from exercising any legal rights, including the right to association.

In Count II, Plaintiff alleges that she "suffered sexual harassment and sexual discrimination" and her equal protection and due process rights were violated.  Plaintiff fails to state facts upon which relief may be granted in regard to Count II  for the same reasons as set forth in response to Count I.  Moreover, for the same reasons, Dr. Sugg, Dr. White, and the "John Doe" defendants are entitled to summary judgment.  The Complaint is void of factual allegations with respect to Dr. Sugg, Dr. White, and the "John Doe" defendants and fails to meet the requisite pleading requirements to state a claim or to withstand summary judgment.

To prevail at summary judgment, Plaintiff "must adequately prove the essential elements of §1983 liability," which include: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right."  *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001).  With respect to Count II, Plaintiff fails to plead facts to sustain a claim in the motion to dismiss context or to survive summary judgment.  Here, Plaintiff fails to identify the interest protected by her due process and equal protection claim.  At a minimum, the Complaint fails to assert allegations regarding the requisite culpability and causation concerning Dr. Sugg, Dr. White or any "John Does."  There is no alleged causal connection between any acts or omission, of these defendants and Plaintiff's alleged encounter with Dr. Cory and the undisputed affidavit testimony conclusively establishes that no such causal connection exists.  *See id.* at 779-80.  Additionally, Plaintiff offers no facts to establish that the acts or omissions of Dr. Sugg, Dr. White or the "John Doe"

24

defendants "shocks the conscience." *Id.* In sum, Plaintiff fails to allege facts to defeat a 12(b)(6) motion and the undisputed affidavit testimony demonstrates that Dr. Sugg, Dr. White and the "John Doe" defendants are entitled to summary judgment.

In regard to Count IV (Failure to Come to the Aid), no legal duty exists for Dr. Sugg, Dr. White or the "John Doe" defendants to protect Plaintiff against any alleged private violence or torts, including, but not limited to any such acts of which they are unaware. *Id.* at 780-81. Plaintiff fails to allege facts linking the alleged acts or omissions of Dr. Sugg, Dr. White, and the "John Doe" defendants with any claimed harm.

In Count VII, Plaintiff captions the claim "Approval and/or Ratification," but once again fails to plead facts establishing the most basic elements of such a claim in regard to Dr. Sugg, Dr. White, and the "John Doe" defendants. Plaintiff fails to include any factual allegations of what these defendants are alleged to have "approved" or "ratified" or that they possessed the requisite level of authority to expose them to individual liability. There is nothing in the Complaint to support an assertion that Dr. Sugg, Dr. White or any "John Doe" defendants ratified any unconstitutional action for which Plaintiff may seek relief. *See, e.g., Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469-70 (7th Cir. 2001), *cert. denied,* 535 U.S. 1017 (2002). To the contrary, Plaintiff uses this claim as yet another means of impermissibly asserting a *respondeat superior* theory contrary to the teachings of *Monell*, 436 U.S. at 694. Thus, Count VII should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Likewise, Plaintiff fails to plead facts establishing the basic elements of a claim with regard to Dr. Sugg, Dr. White and the "John Doe" defendants with regard to the

Section 1983 claims in Counts VIII and IX.  For all of the Section 1983 claims, Plaintiff

fails to identify acts or omissions allegedly taken by Dr. Sugg, Dr. White or the "John

Doe" defendants which give rise to constitutional violations which would sustain a

Section 1983 action, and/or Plaintiff simply fails to plead facts to sustain her claims.

2.      Counts Other Than Section 1983 Claims

With respect to all other Counts asserted against the University, Dr. Sugg, Dr.

White and the "John Doe" defendants, Plaintiff likewise fails to articulate facts asserting

a claim for which relief may be granted.  Each of these Counts recites legal conclusions

and do not rest upon any facts establishing a claim.  As yet another example of

Plaintiff's failure to plead facts, Count XVI fails to identify the alleged "fiduciary duty"

owed by these Defendants to Plaintiff or how each of them allegedly breached such a

duty.  In contrast to these assertions, the Eighth Circuit recently stated that "since the

late 1970s, the general rule is that no special relationship exists between a college and

its *own* students because a college is not an insurer of the safety of its students."

*Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003).

Accordingly, independent of all other grounds for dismissal, all of Plaintiff's non-

Section 1983 claims (including Counts III, X, XI, XII and XVI) against the University as

well as Dr. Sugg, Dr. White and the "John Doe" defendants in their official and

individual-capacities, should be dismissed pursuant to Fed. R. Civ P. 12(b)(6).  In

particular, none of Plaintiff's individual-capacity claims can survive.

3.      Count X: The Conspiracy Claim Fails To Plead Facts Stating A Claim

In addition to the foregoing reasons, with regard to Count X, Plaintiff fails to state

facts establishing the essential elements of a conspiracy pursuant to 42 U.S.C. § 1985.

26

Plaintiff makes no effort to allege facts identifying: (1) who conspired; (2) to deprive her, "either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws"; (3) what acts were done to further the alleged conspiracy; and (4) that she was injured or "deprived of exercising any right or privilege of a citizen of the United States." *Barstad v. Murray* County, 420 F.3d 880, 887 (8th Cir. 2005). Plaintiff does not allege and is unable to show the required "meeting of the minds" to assert a conspiracy. "Because a corporation and its agents are a single person in the eyes of the law, a corporation cannot conspire with itself." *Id.* (citing *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1982)).  Likewise, a "government entity cannot conspire with itself either." *Id.*  Plaintiff, therefore, fails to plead specific facts asserting a conspiracy or to avoid the bar presented by the intracorporate conspiracy doctrine.  Thus, Count X should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See D.R. ex rel. L.R. v. Middle Bucks Area Vo-Tech Sch.*, 972 F.2d 1364 (3d Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993) (concluding that plaintiffs failed to show a conspiracy on the part of the school defendants by depriving equal protection or equal privileges and immunities motivated by "class-based, invidiously discriminatory customs and practices of failing to protect female students from sexual, physical and verbal abuse"); *Doe v. Board of Educ. of Hononegah Community High Sch. Dist. No. 207*, 833 F. Supp. 1366 (N.D. Ill. 1993) (applying intracorporate conspiracy doctrine).

Ultimately, all Counts against Dr. Sugg, Dr. White and the "John Doe" defendants in their individual capacities should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, Defendants should be granted summary judgment as a matter of law.

4.     Plaintiff's Claim of Sexual Harassment and Discrimination Pursuant to
Title IX of the Education Act Amendments Should Be Dismissed Pursuant
to Fed. R. Civ. P. 12(b)(6), or in the Alternative, Defendants Should be
Granted Summary Judgment

In Count III of her Complaint, Plaintiff alleges that she "suffered sexual

harassment and sexual discrimination in violation of Title IX of the Education Act

Amendments.  This claim should be dismissed for failing to state a claim upon which

relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, the

University, Dr. Sugg, Dr. White and the "John Doe" defendants should be granted

summary judgment because: (1) Plaintiff failed to provide actual notice of any alleged

harassment by Dr. Cory; (2) upon receiving notice of Plaintiff's allegations of misconduct

by Dr. Cory, University officials immediately investigated the allegations and took

corrective action; and (3) liability under Title IX may not be predicated on a theory of

*respondeat superior*.  Each aspect of this argument is address herein.

In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 277 (1998),

the Supreme Court examined the issue of "when a school district may be held liable in

damages in an implied right of action under Title IX of the Education Amendments of

1972 . . . for the sexual harassment of a student by one of the district's teachers."  In

that case, a high school teacher had a sexual relationship with one of his students

beginning in the spring semester of 1992 through January, 1993, when a police officer

discovered the teacher and student "engaging in sexual intercourse and arrested" the

teacher.  *Id.* at 278.  Throughout this time period, the student never reported the

relationship to school officials.  *Id.*  Further, "the district had not promulgated or

distributed an official grievance procedure for lodging sexual harassment complaints;

28

nor had it issued a formal anti-harassment policy." *Id.*

During the same time period, the parents of two other students lodged a complaint with the high school's principal in October, 1992, that the teacher was making sexually suggestive and inappropriate remarks during class. *Id.* The principal met with the teacher and cautioned him about making such remarks. *Id.* The teacher apologized to the parents but "indicated that he did not believe he had made offensive remarks." *Id.* The principal reported his meeting with the teacher to one of the high school's guidance counselors, but he did not report the parents' complaint to the school district's superintendent who also served as its Title IX coordinator. *Id.*

Approximately two months after the parents' complaint, in January, 1993, the police officer discovered the teacher and the student and arrested the teacher. *Id.* Subsequently, the school district terminated the teacher and his teaching license was revoked. *Id.* Thereafter, the student and her mother filed suit against the school district alleging violations of Title IX, 42 U.S.C. § 1983, and state negligence law, as well as state law claims against the teacher. *Id.* at 278-79. With respect to each defendant, the student and her mother sought compensatory and punitive damages. *Id.* at 279.

In *Gebser*, the Supreme Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *Id.* at 290. The Court further explained as follows:

> [T]he response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX

29

> violation refuses to take action to bring the recipient into
> compliance.  The premise, in other words, is an official
> decision by the recipient not to remedy the violation.  That
> framework finds a rough parallel in the standard of deliberate
> indifference.  Under a lower standard, there would be a risk
> that the recipient would be liable in damages not for its own
> official decision but instead for its employees' independent
> actions.

*Id.* at 290-91.  The Court unequivocally held, therefore, that a school district is not "liable

in damages under Title IX for a teacher's sexual harassment of a student absent actual

notice and deliberate indifference."  *Id.* at 292.

As explained by the Eighth Circuit, such notice must be given to an "appropriate

person" with "an opportunity to rectify any violation."  *Kinman*, 171 F.3d at 609

(quotations & citation omitted).  In *Gebser*, the Supreme Court stated that an

"appropriate person . . . is, at a minimum, an official of the recipient entity with authority

to take corrective action to end the discrimination."  524 U.S. at 290 (citing 10 U.S.C. §

1682).  The Supreme Court expressly rejected standards of liability for teacher-student

sexual harassment claims based upon principles of *respondeat superior* or constructive

notice.  *Gebser*, 524 U.S. at 282; *Kinman*, 171 F.3d at 609-10.  Moreover, "[t]he fact that

a teacher had actual notice as a wrongdoer is not pertinent to the analysis of notice to

the school district."  *Kinman*, 171 F.3d at 610.  Thus, no recovery may occur against a

school in a Title IX case absent: (1) a showing of actual notice to an official with

authority to take corrective action with respect to the discriminatory behavior; and (2)

any "liability of the school district must be predicated on an official decision not to

remedy the violation."  *Id.*

As stated by the Eighth Circuit, "[f]or a school district to incur liability under Title

IX, it must be (1) deliberately indifferent (2) to known acts of discrimination (3) which

occur under its control."  *Shrum*, 249 F.3d at 782.  Further the Court stated:

> The underlying philosophy is that a recipient cannot be
> directly liable for its deliberate indifference where it lacks the
> authority to take remedial action.  While sexual harassment
> or sexual abuse clearly constitutes discrimination under Title
> IX, a school district will only be liable for situations in which it
> exercises substantial control over both the harasser and the
> context in which the known harassment occurs.  Specifically,
> the school district's deliberate indifference must either
> directly cause the abuse to occur or make students
> vulnerable to such abuse, and that abuse must take place in
> a context subject to the school district's control.

*Id.* (quotations & citations omitted).

In this case, Plaintiff alleges that, during the fall, 2003, Dr. Mark Cory "had [her]

to his house, alone, ostensibly to write a summary of her trip and a grant proposal" as a

follow-up to her junior year abroad in France.  (Compl. ¶ 18.)  Plaintiff then contends,

that instead of working on the summary and grant, Dr. Cory "made a number of verbal

and physical overtures of a sexual nature" to her, "kissed" her, "removed [her] clothing,"

"held [her] down on his bed," and "stated that he just wanted sex from [Plaintiff] for the

next year and then they could go their separate ways."  (*Id.*)  Plaintiff further alleges that

she had two meetings with Dr. Cory which were "emotionally distressing" to her.

Following that, Plaintiff alleges that she "reported the incidents to the University of

Arkansas officials."  (*Id.* ¶ 20.)  She further asserts that she "was told that Cory had

engaged in this type of behavior with a number of other students in the past."  (*Id.*)

The Complaint fails to state a claim under Title IX.  To begin, Plaintiff does not

assert the elementary and required allegation that she suffered discrimination on the

basis of her sex.  Most significantly, Plaintiff does not allege that she provided actual

notice of her alleged encounter (or the two subsequent meetings) with Dr. Cory to any University official who possessed authority to take corrective action and that such individual, in turn, was deliberately indifferent to her report.  In fact, Plaintiff does not allege that she ever made *any* report of alleged harassment to Dr. Sugg or Dr. White and that they were deliberately indifferent to her complaint.  Plaintiff, for example, does not assert that the alleged incident at Dr. Cory's home occurred and that she reported that incident prior to experiencing the two "emotionally distressing" meetings with Dr. Cory.  Plaintiff makes no allegations that the University failed to take corrective action with respect to her complaint against Dr. Cory.

Plaintiff's allegation that she "was told Cory had engaged in this type of behavior with a number of students in the past" is insufficient, as a matter of law, to survive dismissal for failing to meet the heightened pleading standards established by the Supreme Court in *Gebser* and applied by the Eighth Circuit in *Shrum*.  To the extent Plaintiff's characterization that the "number of students in the past" references the reports of Sarah Gilbert and the three other students who had complaints against Dr. Cory, Plaintiff's allegation in the Complaint is inaccurate, misleading and disingenuous. Based upon Ms. Gilbert's report to Ms. Fairchild, it was clear that a total of five students who were aware of each other's experiences, including Ms. Gilbert and Ms. Cox, had complaints against Dr. Cory, *but no one had come forward to report Dr. Cory's alleged conduct to the University  prior to Ms. Gilbert's visit with Ms. Fairchild.*  During the course of Ms. Fairchild's meeting with Ms. Cox, Ms. Fairchild expressed her intention to follow-up and to investigate any other student complaints of past encounters.  These facts are set forth in Ms. Fairchild's Affidavit which is attached to the Motion as Exhibit

1.

Notwithstanding Plaintiff's allegation, the cases demonstrate that actual notice requires more than a "general sense that there is a *risk* that one or more of its teachers will harass a student sexually," *Delgado v. Stegall*, 367 F.3d 668 (7th Cir. 2004), a simple report of inappropriate conduct by a teach or employee, *Gebser*, 524 U.S. at 277-81, or that an employee has "the *potential* for such abuse," *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001), *cert. denied sub nom Baynard v. Alexandria City Sch. Bd.,* 535 U.S. 954 (2002). In this case, Plaintiff makes no allegations regarding what knowledge any University official possessed regarding Dr. Cory. Ms. Fairchild's Affidavit unequivocally states that she never received any prior student complaints of sexual harassment against Dr. Cory. The same is true with respect to the Declarations of Dr. Sugg and Dr. White, which are attached to the Motion as Exhibits 2 and 3.

Moreover, the notice must be provided to a person with authority to take corrective action, and the large majority of employees, such as teachers, coaches and custodial staff, will generally not have sufficient authority to meet this requirement. *Warren v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002). There is no notice under *Gebser* where, as in this case, the alleged harassment occurred prior to any notice being provided to University officials with authority to take corrective action. *See Hayut v. State Univ. of New York*, 352 F.3d 733 (2d Cir. 2003) (stating that notice was inadequate where harassment occurred prior to report to university dean and university officials lacked actual knowledge of harassment). The Complaint lacks any allegations that such notice was provided in this case.

Additionally, the basis of the liability under Title IX asserted in the Complaint

rests upon a theory of *respondeant superior.*  As stated, under *Gebser* , Title IX liability may not be premised on such a theory.  Accordingly, the Complaint is legally deficient for that reason as well.  For all of these reasons, the Complaint fails to allege facts upon which relief may be granted and Count III should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Alternatively, the University, Dr. Sugg, Dr. White, and the "John Doe" defendants are entitled to summary judgment with respect to Plaintiff's Title IX claim.  The basis for summary judgment is straightforward: (1) Sarah Gilbert made the first report of sexual harassment against Dr. Cory in a meeting with Ms. Fairchild on May 12 and also generally informed Ms. Fairchild of the complaints of four other students; (2) Ms. Fairchild urged Ms. Gilbert to have the other four students contact her immediately; (3) following Ms. Fairchild's meeting with Ms. Gilbert, Plaintiff contacted Ms. Fairchild and they met later that same morning; (4) Plaintiff, for the first time, made a report to the University through Ms. Fairchild; (5) Plaintiff's description of her encounter at Dr. Cory's home was largely consensual; (6) based upon the complaints of Ms. Gilbert and Plaintiff, Ms. Fairchild and Provost Bob Smith met with Dr. Cory; (7) Dr. Cory was offered the option to resign or Provost Smith advised him he would proceed with termination proceedings to revoke his tenure; (7) Dr. Cory agreed to resign; (8) within approximately eight days from the date of Ms. Gilbert's and Plaintiff's initial complaints concerning Dr. Cory, the University had conducted an initial investigation and taken corrective action in obtaining Dr. Cory's resignation; (9) Provost Smith took further corrective action by removing Dr. Cory from a scheduled overseas student trip and taking other measures to limit his contact with any students; and (9) Fulbright College

Dean Don Bobbitt worked with Plaintiff so she would not suffer any impairment to her academic progress.  Additionally, Ms. Fairchild's Affidavit establishes that the University had and continues to have a policy prohibiting sexual harassment which is published through numerous outlets, that University maintains, enforces, and educates administrators, faculty, staff and students in regard to its sexual harassment policy.

These facts demonstrate that once the University received actual notice of any alleged harassment regarding Dr. Cory, the institution immediately investigated the matter and took corrective action.  In no sense can the University, Dr. Sugg, Dr. White or any "John Doe" defendants be characterized as being deliberately indifferent to Plaintiff's complaint regarding Dr. Cory.  Applying *Gebser* and *Shrum* to the facts in this case, the University as well as Dr. Sugg, Dr. White and the "John Doe" defendants are entitled to summary judgment as a matter of law on Plaintiff's Title IX claim in Count III.

### D.  AS A MATTER OF LAW, DR. SUGG AND DR. WHITE ARE ENTITLED TO QUALIFIED IMMUNITY

The undisputed facts in the Affidavit of Ms. Fairchild and the Declarations of Dr. Sugg and Dr. White demonstrate that they are entitled to qualified immunity with respect to all claims asserted against them.  In *Harlow v. Fitzgerald*, the U.S. Supreme Court held: "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982).  The "purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well

being." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002).  Qualified immunity provides room for mistaken judgment and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The defense depends on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law . . . ." *Harlow*, 457 U.S. at 818. "No other 'circumstances' are relevant to the issue," as *Harlow* "rejected the inquiry into state of mind in favor of a wholly objective standard." *Davis v. Scherer*, 468 U.S. 183, 191 (1984).  "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Assertion of qualified immunity "triggers a three-pronged inquiry: (1) whether the plaintiffs have asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right." *Burnham v. Ianni*, 119 F.3d 668, 673-74 (8th Cir. 1997).  *Accord Baldridge v. Cordes*, 350 Ark. 114, 119, 85 S.W.3d 511, 514 (2002) ("Thus, an official is immune from suit if his actions did not violate clearly established principles of law of which a reasonable person would have knowledge." (citing *Virden v. Roper*, 302 Ark. 125, 788 S.W.2d 470 (1990))).  The Court "must consider what specific constitutional rights the defendants allegedly violated, whether the rights were clearly established in law at the time of the alleged violation, and whether a reasonable person in the official's position

36

would have known that his conduct would violate such rights." *Waddell v. Forney*, 108 F.3d 889, 891 (8th Cir. 1997).  *See also Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998).

With qualified immunity, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  *See Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985).  In deciding this issue, a court should consider the specific conduct complained of, and look to statutory and case precedent, as well as established general legal principles.  *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989), *cert. denied*, 493 U.S. 1072 (1990).

A plaintiff must show a violation of more than an abstract right in order to overcome the defense.  *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  A plaintiff "cannot assert a broad constitutional right, and violations thereof, and survive a motion for summary judgment on the qualified immunity grounds simply because there is no dispute that [she] does indeed have the right asserted . . . [otherwise] we would be permitting [her] 'to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violations of extremely abstract rights.'"  *Latimore v. Widseth*, 7 F.3d 709, 712 (8th Cir. 1993) (quoting *Anderson, supra,* at 639), *cert. denied*, 510 U.S. 1140 (1994).  In *Saucier v. Katz*, the Supreme Court stated:

> [T]here is no doubt that *Graham v. Connor* . . . clearly
> establishes the general proposition that use of force is
> contrary to the Fourth Amendment if it is excessive under
> objective standards of reasonableness.   Yet that is not
> enough.   Rather, we emphasized in *Anderson* that the right

> the official is alleged to have violated must have been clearly
> established in a more particularized, and hence more
> relevant, sense: The contours of the right must be sufficiently
> clear that a reasonable official would understand that what
> he is doing violates that right.  The relevant, dispositive
> inquiry in determining whether a right is clearly established is
> whether it would be clear to a reasonable officer that his
> conduct was unlawful in the situation he confronted. [A]s we
> explained in *Anderson*, the right allegedly violated must be
> defined at the appropriate level of specificity before a court
> can determine if it was clearly established.

533 U.S. at 201 (internal quotations & citations omitted).

In this case, Plaintiff fails to meet the initial requirement to assert a violation of a

"clearly established constitutional right," and Dr. Sugg and Dr. White are entitled to

qualified immunity.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  In conclusory fashion,

Plaintiff broadly asserts numerous generic claims as violations of her constitutional

rights, including the First Amendment right of freedom of association, the Fourteenth

Amendment right to Due Process and Equal Protection, violations of her constitutional

right due to sexual harassment and discrimination, the failure to come to the aid, the

failure to properly train, the failure to investigate, discipline, correct or supervise, the

approval and/or ratification of unlawful conduct, the failure to create/maintain policies &

procedures, inadequate policies, procedures, customs and usages, and conspiracy.

The multitude of alleged constitutional violations are based on a very narrow and limited

set of allegations.  Specifically, Paragraphs 18 and 19 make certain allegations relating

solely to Dr. Cory and his overtures to have sex with Plaintiff and two meetings which

were "emotionally distressing."

The Complaint *does not* allege that Dr. Sugg or Dr. White participated in any

wrongful conduct with Plaintiff.  The conclusory allegation that Dr. Sugg and Dr. White

failed to protect or to come to Plaintiff's aid does not constitute a violation of her Due

Process rights under the Constitution.   *See DeShaney v. Winnebago County Dept of*

*Soc. Servs.*, 489 U.S. 189 (1989); *Dorothy J. v. Little Rock Sch. Dist.*, 794 F. Supp.

1405 (E.D. Ark. 1992), *aff'd*, 7 F.3d 729 (8th Cir. 1993).   Additionally, the alleged incident

with Dr. Cory is not connected or linked to Dr. Sugg or Dr. White in any which would

justify holding them liable for such acts.   *See Martinez v. California*, 444 U.S. 277

(1980).

In *DeShaney*, the Supreme Court stated, in part, as follows:

> [N]othing in the language of the Due Process Clause itself
> requires the State to protect the life, liberty, and property of
> its citizens against invasion by private actors.  The Clause is
> phrased as a limitation on the State's power to act, not as a
> guarantee of certain minimal levels of safety and security.  It
> forbids the State itself to deprive individuals of life, liberty, or
> property without due process of law, but its language cannot
> fairly be extended to impose an affirmative obligation on the
> State to ensure that those interests do not come to harm
> through other means. . . . Its purpose was to protect the
> people from the State, **not to ensure that the State
> protected them from each other**.  The Framers were
> content to leave the extent of governmental obligation in the
> latter area to the democratic political process.

*Dorothy J.,* 794 F. Supp. at 1409-10 (quoting *DeShaney*, 489 U.S. at 195-96)

(quotations omitted & emphasis added).   Under the facts alleged, Dr. Cory's alleged

conduct constitutes "private violence . . . [which] usually falls beyond the reach of the

Due Process Clause under *DeShaney*."   *See Dorothy J.*, 794 F. Supp. at 1410.

As stated in *DeShaney*, the "affirmative duty to protect arises not from the State's

knowledge of the individual's predicament or from its expressions of intent to help [her],

but from the limitation which it has imposed upon [her] freedom to act on [her] own

behalf." 489 U.S. at 200.  Here, the Complaint contains no allegations of any special custodial relationship between the University, Dr. Sugg, Dr. White, any "John Doe" defendants and Plaintiff.

In *Dorothy J.*, the mother of a mentally-handicapped student who was allegedly sexually assaulted and raped by another student filed a Section 1983 suit against the school district and others alleging that their actions "deprived her son of his rights to personal integrity and security under the Fourteenth Amendment to the United States Constitution." *Dorothy J.,* 794 F. Supp. at 1405-06.  At the time, the assaulting student was a ward of the Arkansas Department of Human Services, was known by the defendants to be disposed to violence and sexual assaults, and was placed in the school program without taking any precautionary measures to protect other students. *Id.* at 1407-08.  Primarily relying upon *DeShaney*, the District Court in *Dorothy J.* held, among other things, that the attacking student was not a state actor, that no affirmative constitutional duty existed to protect the victim because of a lack of any custodial relationship between the state and that person, that despite awareness of the attacking student's violent tendencies, the attack was too remote in time from his original placement in the program, and qualified immunity probably existed. *Id.* at 1420-24. *See also Rudd v. Pulaski County Special Sch. Dist.*, 341 Ark. 794, 20 S.W.3d 310 (2000) (finding no liability against school district and its employees after one student shot and killed another student on a school bus).

In *Reeves v. Besonen*, 754 F. Supp. 1135 (E.D. Mich. 1991), a student filed suit for violation of his substantive due process rights, including "the Fourteenth Amendment right not to be deprived of life, liberty, or property without due process of law, and the

right to equal protection of the law," after being subjected to hazing by members of his

high school football team during a bus ride.  *Id.* at 1138.  In that case, the district court

held that the football coach (who was also the bus driver during the hazing incident) did

not violate the student's substantive due process rights and that, even if the coach had

an affirmative duty to protect the student, he was entitled to qualified immunity.  *Id.* at

1140-42.  Relying on *DeShaney*, the district court ruled:

> It is clear to this Court that the actions of the Defendants
> here did not amount to a deprivation of the Plaintiff's
> *constitutional* rights.  The injuries and indignities to which the
> Plaintiff was subjected took place at night in conjunction with
> the Plaintiff's voluntary participation on the school football
> team.  There is no indication in the facts before the Court
> that his participation was compulsory, or that his riding the
> school bus . . . amounted to "incarceration," or "involuntary
> commitment," or "police custody," or anything of that sort.  In
> the absence of such State coercion, *DeShaney* makes clear
> that the *Constitution* imposes no duty on the state to care for
> the Plaintiff's safety.

*Id.* at 1140.  The court further held that the coach was entitled to qualified immunity

because the plaintiff's "right to state protection from physical assault under the

circumstances" of the case were not "clearly established."  *Id.* at 1141.  The same is

true in this case.  Plaintiff also fails to allege facts establishing how her rights under the

Equal Protection Clause were violated.

Even if this Court were to determine that Plaintiff alleged violations of clearly

established constitutional rights, Defendants would be entitled to qualified immunity.

*See Dorothy J.*, 794 F. Supp. at 1422-24; *Reeves*, 754 F. Supp. at 1141-42.  "The

Supreme Court has made clear that whether an official protected by qualified immunity

may be held personally liable for an allegedly unlawful official action generally turns on

the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Reeves*, 754 F. Supp. at 1141 (quotations & citation omitted).  Plaintiff fails to allege facts establishing that Defendants did not act with "objective reasonableness."  To the contrary, the factual evidence established in the Declarations of Dr. Sugg and Dr. White and the Affidavit of Ms. Fairchild demonstrate that Plaintiff never gave notice to Dr. Sugg and Dr. White of any allegedly unlawful activity or sexual harassment.  Further, Plaintiff fails to identify any specific policies, customs or practices to which Dr. Sugg and Dr. White were deliberately indifferent.  The undisputed facts establish that the University had and has a policy against sexual harassment which is actively enforced and for which University personnel and students receive educational training.  In sum, Defendants members are entitled to qualified immunity from all Section 1983 claims even if the Court concludes that Plaintiff has sufficiently alleged constitutional violations.

### E.  AS A MATTER OF LAW, PLAINTIFF'S STATE LAW CLAIMS AGAINST THE UNIVERSITY, DR. SUGG, AND DR. WHITE ARE BARRED BY STATE LAW IMMUNITIES

1.  Article V, Section 20 of the Arkansas Constitution Bars Plaintiff's State Law Claims Against the University

The University of Arkansas is a public institution of higher education organized and existing under the laws and Constitution of the State of Arkansas.  The Board of Trustees of the University of Arkansas is a corporate and body politic which governs, manages, and controls the University system.  *See* Ark. Code Ann. §§ 6-64-202 - 6-64-203 (Repl. 2003).  Within the framework of the University system, the UAF exists as a separate campus but is not a legal entity capable of being sued in its own right.  As an

instrumentality of the State, Plaintiff's claims against the University in Counts XI, XII and XVI constitute actions against the State which are barred by the sovereign immunity clause of the Arkansas Constitution.  *See Grine v. Board of Trustees*, 338 Ark. 791, 2 S.W.2d 54 (1999).  Similarly, although nominally asserted against Dr. Sugg, Dr. White and the University "John Doe" defendants, the underlying suit, in reality, is a claim against the State of Arkansas which is also barred by the sovereign immunity clause.

Specifically, Article V, Section 20 of the Arkansas Constitution provides as follows:

> The State of Arkansas shall never be made a defendant in any of her courts.

As applied by the Arkansas Supreme Court, Article V, Section 20 strictly proscribes lawsuits against the State, and the Court has held on numerous occasions that no legal authority exists for the State, acting through the General Assembly or by any other means, to consent to a waiver of its immunity.  *See Fairbanks v. Sheffield*, 226 Ark.703, 292 S.W.2d 82 (1956); *Arkansas State Highway Comm'n v. McNeil*, 222 Ark. 643, 262 S.W.2d 129 (1953); *Arkansas State Highway Comm'n v. Nelson Bros.*, 191 Ark. 629, 87 S.W.2d 394 (1935); *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742 (1909).

In discussing this constitutional provision in *Watson v. Dodge*, 187 Ark. 1055, 1061, 63 S.W.2d 993, 995 (1933), the Arkansas Supreme Court explained:

> [I]t was the purpose of the framers of the Constitution of 1874 to withdraw all power and authority theretofore existing in the Legislature to grant permission for the State to be sued by individuals or corporations in her courts.

The Court further expounded upon the unequivocal nature of the immunity as follows:

43

> The completeness of the intent of such immunity is best
> illustrated by the long and unequivocal line of cases
> expressly recognizing and protecting the immunity.  As early
> as *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742 (1909), this
> court held that the constitutional prohibition was not merely
> declaratory that the state could not be sued without her
> consent, but that *all* suits against the state were expressly
> forbidden.  Further where the pleadings show that the action
> is, in effect, one against the state, the trial court acquires no
> jurisdiction.

*Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 455, 784

S.W.2d 771, 773, *cert. denied*, 498 U.S. 824 (1990).

Beyond shielding the State, the sovereign immunity clause of the Arkansas

Constitution also protects officers and agencies of the State.  In previous instances, the

Supreme Court ruled that State agencies fall within the scope of the immunity granted

by Article V, Section 20 of the Arkansas Constitution.  As stated in well-settled case law,

a suit against the University of Arkansas or its Board of Trustees constitutes a suit

against the State.  *See Arkansas v. Texas*, 346 U.S. 368 (1953); *Laney v. University of

Ark.*, 241 Ark. 399, 407 S.W.2d 916 (1966); *see also Allen Eng'g Co. v. Kays*, 106 Ark.

174, 152 S.W. 992 (1913).  Plaintiff's Complaint, therefore, is a claim against the State.

*See Grine*, 338 Ark. at 791, 2 S.W.3d at 54.

In a continuing stream of cases, the Arkansas Supreme Court concluded that a

suit instituted against an individual State officer, employee, or agency, even though

nominally captioned against an individual or entity, is actually a claim against the State,

and, therefore, barred by the sovereign immunity clause.  For example, in *Page v.

McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938), the plaintiffs sued the State Treasurer,

County Assessors, and County Clerks to enjoin the Treasurer from honoring State

44

warrants issued to the Assessors and the Clerks.  Upon review, the Supreme Court ruled that the action was an unconstitutional suit against the State over which the lower court lacked jurisdiction:

> The question of whether a particular suit is one against the state is not to be determined solely by reference to the nominal parties to the record, and the fact that the state is not named as a party defendant does not conclusively establish that the suit is not within the rule prohibiting suits against the sovereign without its consent. . . . [W]here a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent.

*Id.* at 336-37, 118 S.W.2d at 238 (quotations & citations omitted). *See also Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990) (suit to enforce contract against State Highway Commission); *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986) (negligence action against State Highway Department regarding a vehicular accident); *Wilson v. Pinkert*, 210 Ark. 1093, 198 S.W.2d 723 (1947) (suit to enjoin State Land Commissioner from selling land taken by State for non-payment of taxes); *Watson v. Dodge*, 187 Ark. 1055, 63 S.W.2d 993 (1933) (suit against State Revenue Commissioner to prohibit him from processing funds); *Allen Eng'g Co. v. Kays*, 106 Ark. 174, 152 S.W. 992 (1913) (replevin action against Board of Trustees of State College to recover machinery); *Pitcock v. State*, 91 Ark. 527, 121 S.W. 742 (1909) (suit against Board of Commissioners of State Penitentiary to force Board to comply with a contract).

45

In this case, the state law claims in Counts XI, XII and XVI are asserted against all Defendants without distinction, including Dr. Sugg, Dr. White and the University "John Doe defendants.  The Complaint, however, makes no express statements with respect to whether the state law claims are asserted against the parties in their official or individual capacities.  Due to this ambiguity, this Court is required to treat Plaintiff's claims solely as official-capacity claims.  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.")[1]  As such, Plaintiff's actions against Dr. Sugg, Dr. White, and the University "John Doe" defendants are claims against the State which are barred by the sovereign immunity clause of the Arkansas Constitution.  *Page*, 196 Ark. at 336-37, 118 S.W.2d at 238.

Likewise, Plaintiff's state law tort claims in Counts XIII, XIV and XV are asserted solely against Separate Defendant Cory, but do not specify whether he is sued in his official or individual capacities.  Therefore, to the extent the Court interprets and treats

---

[1]  In the context of Section 1983 civil rights claims, the Eighth Circuit previously explained:  "Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants."  *Johnson*, 172 F.3d at 535.  "However, we do not require that personal capacity claims be clearly-pleaded simply to ensure adequate notice to defendants.  We also strictly enforce this pleading requirement because the Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees."  *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997) (quoting *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)) (alteration & internal quotations omitted).  Therefore, "absent a clear statement that officials are being sued in their personal capacities," a court "interpret[s] the complaint as including only official-capacity claims."  *Murphy*, 127 F.3d at 754 (quoting *Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619 (8th Cir. 1995)) (internal quotations omitted); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual.  If the complaint does not specifically name the defendant in his individual

Counts XIII, XIV and XV as official-capacity claims, they are nothing more than actions against the State which are barred by Article V, Section 20 of the Arkansas Constitution. *Id*. Thus, the University seeks the dismissal of all official-capacity state law claims which are, in reality, actions against the institution.

In Counts XI and XII of her Complaint, Plaintiff's asserts violations of the Arkansas Civil Rights Act of 1993 ("ACRA"). By express statutory language, however, the ACRA does not waive or abrogate sovereign immunity. The statute provides that "[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas." Ark. Code Ann. § 16-123-104 (Supp. 2001). Accordingly, federal and state courts in Arkansas have upheld the sovereign immunity bar to suit to ACRA actions initiated against state entities and officials in their official capacities. *Doe v. Barger*, 193 F. Supp. 2d 1112, 1118 (E.D. Ark. 2002); *Brown v. Arkansas State Heating, Ventilation, Air Conditioning & Refrigeration (HVACR) Licensing Bd.*, 336 Ark. 34, 38, 984 S.W.2d 402 (1999). Based upon the constitutional sovereign immunity provision, therefore, Plaintiff's ACRA claims against the University, Dr. Sugg, Dr. White, Dr. Cory, and the University "John Doe" defendants should be dismissed.

Additionally, if compensatory damages were awarded against Dr. Sugg, Dr. White, and the University "John Doe" defendants, the State would be required to indemnify each of them and to pay any judgment pursuant to Ark. Code Ann. § 21-9-203(a) (Repl. 2004), which provides:

> The State of Arkansas shall pay actual, but not punitive, damages adjudged by a state or federal court, or entered by such a court as a result of a compromise settlement

capacity, it is presumed he is sued only in his official capacity.") The same rationale applies with respect to Plaintiff's state law claims in this case.

> approved and recommended by the Attorney General,
> against officers or employees of the State of Arkansas, or
> against the estate of such an officer or employee, based on
> an act or omission by the officer or employee while acting
> without malice and in good faith within the course and scope
> of his or her employment and in the performance of his or
> her official duties.

*Id. See also Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986).  Although Plaintiff

seeks exemplary and punitive damages against Dr. Sugg, Dr. White, and the University

"John Doe" defendants, she fails to allege *facts* establishing that any such officials acted

with malice or outside the course and scope of their employment.  Thus, any monetary

award against these individuals would ultimately derive from State funds and directly

impact the State itself.  Plaintiff does not seek any equitable relief with regard to her

state law claims, and none of the limited exceptions to sovereign immunity recognized

in *Cammack v. Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984), including acts deemed

to be *ultra vires*, illegal or arbitrary, is relevant in this case.

    For these reasons, pursuant to Article V, Section 20 of the Arkansas Constitution,

the Court should dismiss: (1) all Plaintiff's state law claims asserted against the

University, including Counts XI, XII and XVI; (2) all official-capacity state law claims

asserted against Dr. Sugg, Dr. White and the University "John Doe" defendants,

including Counts XI, XII and XVI; and (3) all official-capacity state law claims asserted

against former professor and Separate Defendant Cory, including Counts XI, XII, XIII,

XIV, XV and XVI.  In each of these instances, the University (and thus the State of

Arkansas) is the real party in interest and the constitutional sovereign immunity clause

bars such actions.

        2.  The Arkansas Public Official Immunity Statute Bars

48

Plaintiff's State Law Claims Against Dr. Sugg, Dr. White
and the University "John Doe" Defendants in their
Individual Capacities

To the extent the Court interprets Plaintiff's Complaint to assert individual-capacity claims against Dr. Sugg, Dr. White, and the University "John Doe" defendants, all such claims are barred by the Arkansas public official immunity statute.  *See* Ark. Code Ann. § 19-10-305(a) (Supp. 2005).  In relevant part, the statute provides:

> Officers and employees of the State of Arkansas are
> immune from liability and from suit, except to the extent that
> they may be covered by liability insurance, for damages, for
> acts or omissions, other than malicious acts or omissions,
> occurring within the course and scope of their employment.

*Id.*  Again, Plaintiff fails to state whether Dr. Sugg, Dr. White, and the "John Doe" defendants are sued in their official or individual capacities with respect to each of the claims asserted against them (Counts I – XII & XVI).  As such, these Defendants are entitled to be treated solely as official-capacity parties and all of Plaintiff's claims against them should be dismissed pursuant to the Eleventh Amendment and the sovereign immunity clause of the Arkansas Constitution.  However, in the event the Court treats any of the claims asserted in Counts I through XII and XVI as individual-capacity claims, the public official immunity statute bars such actions.  *Id.*

Specifically, the Complaint lacks any allegations asserting that Dr. Sugg, Dr. White or the "John Doe" defendants maintain any liability insurance which would subject them to suit.  Most significantly, Plaintiff fails to make any rudimentary factual allegations remotely stating the basis or elements of each cause of action alleged in Counts I through XII and XVI.  In this regard, the Complaint lacks any allegations of how these Defendants violated Plaintiff's rights or even what actions each individual took

which fell outside the course and scope of his or her employment.  Further, the

Complaint lacks any allegations allowing the Court to conclude that Dr. Sugg, Dr. White

or any of the "John Does" acted with malice or engaged in malicious conduct.  *See*

*Fuqua v. Flowers*, 341 Ark. 901, 20 S.W.3d 388 (2000).  With respect to these

Defendants and viewed as a whole, the factual allegations in the Complaint are limited

to nothing more than a basic assertion that each person is employed by the University.

For example, in Paragraphs 23 and 24 of the Complaint, Plaintiff alleges that the

University "knew of Cory's continuing activities and did not investigate, discipline and/or

stop Cory" and that the University "had and has policies and/or customs that tolerated,

approved, condoned, and/or allowed such behavior by Cory."  The Complaint, therefore,

makes allegations with respect to the *University* but *not* to Dr. Sugg, Dr. White or the

"John Doe" defendants.  Even with respect to Plaintiff's allegations concerning customs

and policies, the Complaint fails to identify any role played by, actions taken by or

causal connection between the actions and/or inactions of Dr. Sugg, Dr. White or the

"John Doe" defendants and any harm suffered by Plaintiff.  Consequently, Dr. Sugg, Dr.

White and the "John Doe" defendants are entitled to dismissal of each and every

individual-capacity claim asserted against them pursuant to Ark. Code Ann. § 19-10-

305(a).

## III.
## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint and First Amendment to

Complaint should be dismissed in their entirety with respect to the University of

Arkansas, Dr. B. Alan Sugg, Dr. John A. White, and the "John Doe" defendants in their

official and individual-capacities.  Additionally, all official-capacity claims asserted

against former professor and Separate Defendant Mark Cory should be dismissed as

well.

By:    /s/ T. Scott Varady
                T. SCOTT VARADY
                Arkansas Bar No. 93172
                WILLIAM R. KINCAID
                Ark. Bar No. 93125
                Associate General Counsel
                University of Arkansas
                421 Administration Building
                Fayetteville AR 72701
                Phone: 479-575-5401
                E-mail: svarady@uark.edu

                COUNSEL FOR SEPARATE
                DEFENDANTS UNIVERSITY OF
                ARKANSAS   B. ALAN SUGG, AND
                JOHN A. WHITE

## CERTIFICATE OF SERVICE

I, T. Scott Varady, hereby certify that on this 2nd day of December, 2005, I have electronically filed with the Clerk of the Court by CM/ECF a true and correct copy of the foregoing document which will electronically send notification and a copy of such filing to the following listed counsel:

By:     /s/ T. Scott Varady_____
T. SCOTT VARADY
Arkansas Bar No. 93172
WILLIAM R. KINCAID
Ark. Bar No. 93125
Associate General Counsel
University of Arkansas
421 Administration Building
Fayetteville AR 72701
Phone: 479-575-5401
E-mail: svarady@uark.edu

COUNSEL FOR SEPARATE
DEFENDANTS UNIVERSITY OF
ARKANSAS   B. ALAN SUGG, AND
JOHN A. WHITE

KATHLYN GRAVES
Arkansas Bar No. 76045
MITCHESS, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue,
Suite 1800
Little Rock, AR  72201\
Phone: 501-688-8800
E-mail: kgraves@mwsgw.com
COUNSEL FOR SEPARATE DEFENDANT MARK CORY

ROBERT L. DEPPER, JR.
DEPPER LAW FIRM
314 East Oak
El Dorado, AR  71730
Phone: 870-862-5505
e-mail: bdepper@cox-internet.com
COUNSEL FOR PLAINTIFF SARAH COX

WM. C. PLOUFFE, JR.
ATTORNEY & COUNSELOR AT LAW
211 N. Washington Street, No. 107
P.O. Box 1537
El Dorado, AR  71731-1537
Phone: 870-864-9930
e-mail: Plouffelaw@lawyer.com
COUNSELF OR PLAINTIFF SARAH COX