**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SARAH COX                                                                                              PLAINTIFF

v.                                                    NO. 4:05CV0001254-WRW

UNIVERSITY OF ARKANSAS, et al.                                               DEFENDANTS

<u>ORDER</u>

Plaintiff brought suit against the University of Arkansas, its President Alan Sugg, Chancellor

John White, Professor Mark Cory, and unnamed "John Doe" Defendants, alleging that she was

sexually harassed in violation of both the United States and Arkansas Constitutions; Title IX; 42

U.S.C. §§ 1983, 1985, 1988; and Ark. Code Ann. §§ 16-123-105,106, and 107; she also alleges state

tort claims of breach of fiduciary duty, battery, outrage, and sexual abuse.  Although the Motion to

Dismiss filed by the other Defendants encompasses claims made against Dr. Cory (Doc. No. 16),

he filed a separate Motion to Dismiss (Doc. No. 14).

**I.      Background[1]**

During the fall of 2003, Defendant Dr. Mark Cory ("Dr. Cory") invited Plaintiff, an

undergraduate student of the University of Arkansas, to his home.[2]  Over the course of the evening,

Dr. Cory made several verbal and physical advances to Plaintiff.[3]   He suggested that they have a

---

[1]With the exceptions of the variations footnoted, the remaining background has been
taken from Doc. No. 17.

[2]Doc. No. 1, p. 4.

[3]Doc. No. 36, p. 2.

1

sexual relationship during the upcoming academic year.[4]  Plaintiff maintains that she left Dr. Cory's home feeling uncomfortable, and worried about his sexual proposal.[5]  Plaintiff asserts that she wanted to report the incident but did not know who to speak to at the University.[6]

The University has had a policy prohibiting sexual harassment since "at least 1994."[7]  The University also employs Ms. Kathryn Fairchild ("Ms. Fairchild"), who serves as the Assistant Director of the Office of Affirmative Action and is responsible for investigating any allegations of discrimination.  The University's sexual harassment policy, which applies to faculty, staff, and students, is published each year in multiple locations, including the Faculty Handbook, the Staff Handbook, the Undergraduate Student Handbook, and the Graduate Student Handbook -- including the versions of these publications which were in force during the 2003-2004 academic year.  These publications are available to all members of the University community through the University's website.   The University's policy prohibiting sexual harassment is also available on the Office of Affirmative Action website.[8]

The University notes that it conducts training sessions every year through its Office of Affirmative Action with administrators, deans, department heads, faculty, staff, and students (primarily graduate students with teaching responsibilities) regarding the University's policy against sexual harassment.  The Office of Affirmative Action and the Office of General Counsel also

---

[4]Doc. No. 1, p. 4.

[5]Doc. No. 36, p. 2.

[6]Doc. No. 36, p. 2.

[7]Doc. No. 17.

[8]*See* http://www.uark.edu/depts/ofaa/

2

provide sexual harassment training sessions for deans, department heads, program directors, and related administrators. Session attendees are asked to review the University's sexual harassment policy with faculty and staff within their department.

On April 16, 2004, Ms. Fairchild was contacted by the University's Office of Student Affairs. Student Affairs had been contacted by the father of an undergraduate student who alleged Dr. Cory had sexually harassed his daughter. In a telephone conversation with the student's father the same day, Ms. Fairchild learned that his daughter and at least four other students claimed Dr. Cory sexually harassed them. The father was certain that his daughter wished to make a formal complaint but would do so only after she had taken her last final. Ms. Fairchild advised the father that she needed to meet with his daughter immediately to avoid the possibility of any further misconduct. According to Defendants, the father would not agree, and suggested a meeting on May 10, 2004.

In their conversation, Ms. Fairchild learned that the other students were also reluctant to come forward, but that his daughter was attempting to convince them to do so. Despite Ms. Fairchild's efforts, the student's father would not provide any of the other student's names.

As promised, the student telephoned Ms. Fairchild on May 10, 2004, and they agreed to meet on May 12, 2004. During their meeting, the student recounted her story as well as the stories of some of the other students. The student never revealed the names of any of the other alleged victims. Nevertheless, based on their conversation, Ms. Fairchild knew that there were four other students who knew of each other's experiences with Dr. Cory. None of the other students reported Dr. Cory's inappropriate behavior before Ms. Fairchild's meeting with the initial student on May 12, 2004.

Within hours of Ms. Fairchild's meeting with the initial student, Plaintiff, Sarah Cox, contacted her. Ms. Fairchild had Plaintiff come to her office immediately. This meeting marked the first time that Plaintiff notified any "university official with authority to take corrective action of any allegations of sexual harassment concerning Dr. Cory."[9]

In their meeting, Plaintiff recounted the events that she alleged occurred with Dr. Cory during the previous fall. According to Plaintiff, sometime in September 2003, Dr. Cory invited her to his home to work on her thesis. After working for a time, the two went for a walk in a nearby park. On a bridge at the park, Dr. Cory kissed Plaintiff and complimented her hair. They walked back to the house and Dr. Cory offered her coffee, and they looked at pictures. Dr. Cory's sexual overtures escalated until he eventually picked Plaintiff up and carried her to his bedroom where they undressed and got in bed together. A question exists as to whether the contact had been consensual up to that point. After Dr. Cory went to his bathroom to obtain a condom, Plaintiff told him that she wanted to leave. After some discussion, Plaintiff dressed and indicated that she was going to leave. Plaintiff maintains that Dr. Cory was upset and tried to get her to stay by hugging her and putting his hands on her breasts. Plaintiff left at this point.

After this incident, Plaintiff's contact with Dr. Cory was limited to a couple of meetings in his office and one email. Plaintiff noted that on at least one occasion, Dr. Cory gave her an uncomfortably long hug and suggested that they go away together for a weekend. Ms. Fairchild took down Plaintiff's version of events and mentioned that she was looking into other complaints against Dr. Cory.

---

[9]Doc. No. 17.

On May 12, 2004, the father of the student with whom Ms. Fairchild had first met, faxed Ms. Fairchild his daughter's statement, made in the presence of an attorney. Although the statement was dated January 21, 2004, it was not furnished to Ms. Fairchild until May 12, 2004.

Between May 12-17, 2004, Ms. Fairchild communicated with Dean Donald Babbitt and Provost Bob Smith about the allegations against Dr. Cory. Neither had any previous knowledge of the alleged harassment. Ms. Fairchild met with Dr. Cory on May 18, 2004, and advised him of the charges that had been made by the first student that led her to meet Plaintiff. Dr. Cory was advised that he could voluntarily resign from his position, or Provost Smith would initiate termination proceedings against him and revoke his tenure. Dr. Cory opted to resign.

Dr. Cory was advised to avoid any contact with students and told that he would not be permitted to lead an upcoming overseas student trip. The day after the meeting, Dr. Cory submitted his letter of resignation, relinquishing his tenure rights effective June 30, 2004. The University accepted Dr. Cory's letter of resignation on May 20, 2004. Within eight days of Ms. Fairchild's first meeting with Plaintiff, Dr. Cory had resigned his position.

On May 21, 2004, Dr. Smith outlined the conditions of Dr. Cory's employment through his resignation date. Dr. Cory was directed to not have any contact with any current or former students with whom he had had personal relationships of any type or with whom he had sought to initiate such a relationship. Dr. Cory was advised that after his resignation, he could not seek or accept any employment or volunteer role that would place him in contact with University of Arkansas students. Dr. Cory was also required to come to Ms. Fairchild's office each Friday and document any contacts he had that week with former students.

On May 21, 2004, Ms. Fairchild renewed her efforts to obtain the names of other alleged victims.  On May 24 and 25, 2005, Ms. Fairchild met with three other students who had complaints against Dr. Cory.  Information regarding the other alleged victims has not been provided in this suit.

## II.   Standard of Review

Dismissal of a Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle him to relief."[10]   A court must accept the allegations of the complaint as true and construe the complaint in favor of the plaintiff.[11]   The Complaint will be dismissed only if it appears that the plaintiff has failed to prove any facts in support of her claim which would entitle her to relief.[12]   A complaint should not be dismissed, nor a cause of action ignored,  merely because the complaint does not state with precision all elements that give rise to a legal basis for recovery.[13]

## III.   Analysis

Dr. Cory suggests that Plaintiff only intended to bring suit against him for the tort claims of outrage, sexual abuse, and battery, but he is wrong.  Plaintiff brought all claims against all Defendants with the exception of the three additional tort claims brought solely against Dr. Cory. As a student of the University of Arkansas School of Law in Fayetteville, Plaintiff has standing to seek equitable relief.

---

[10]*Springdale Education v. Springdale School*, 133 F.3d 649 (8th Cir. 1998); *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983).

[11]*In re Staffmark, Inc. Securities Litigation*, 123 F. Supp. 2d 1160, 1162 (E.D. Ark. 2000).

[12]*Jenkins v. McKeithen*, 395 U.S. 411 (1969).

[13]*Smith v. Ouachita Technical College*, 337 F.3d 1079, 1080 (8th Cir. 2003).

For ease of analysis, Plaintiff's alleged causes of action and requested damages made against all Defendants in their individual and official capacities are summarized as follows:

1. Violation of the Right of Association; First, Ninth, & Fourteenth Amendments to the United States Constitution; requests money damages.

2. Sexual Harassment & Discrimination; Equal Protection & Due Process; Ninth & Fourteenth Amendments to the United States Constitution; requests money damages.

3. Sexual Harassment & Discrimination; Title IX of the Education Amendments, 20 U.S.C. §§ 1681-1686; requests money damages.

4.  42 U.S.C. § 1983

   a. Failure to Come to the Aid; requests money damages.
   b. Failure to Properly Train; requests both money damages and requirement to properly train Defendants who violated Plaintiff's rights.
   c. Failure to Investigate, Discipline, Correct, or Supervise; requests both money damages and requirement to investigate Defendants who violated Plaintiff's rights.
   d. Improper Approval and/or Ratification of Dr. Cory's conduct; requests money damages.
   e. Failure to Create or Maintain Proper Formal Polices & Procedures; requests both money damages and requirement to enact adequate sexual harassment procedures.
   f. Inadequate Policies, Procedures, Customs, & Usages; requests both money damages and requirement to enact adequate sexual harassment procedures.

5. Conspiracy under 42 U.S.C. § 1985; requests money damages.

6. Sexual Harassment & Discrimination; Equal Protection & Due Process; Article II, Sections 3, 13, 18, 21, and 29 of the Arkansas Constitution; requests money damages.

7. Sexual Harassment & Discrimination; Ark. Code Ann. §§16-123-105-- 16-123-107; requests money damages.

8. Breach of Fiduciary Duty; requests money damages.

Plaintiff also raises the state law tort claims of outrage, sexual abuse, and battery against Dr. Cory.

In her response to Defendants' Motion to Dismiss, Plaintiff makes several concessions:

• Plaintiff admits that her Title IX claim against Dr. Sugg, Dr. White, and John Does should be dismissed for failure to state a claim upon which relief can be granted.

- Plaintiff admits that the University is protected via the Eleventh Amendment and Article 5, Section 20 of the Arkansas Constitution from suit under Ark. Code Ann. § 16-123-105, 106, or 107.

- Plaintiff concedes that she has presented no evidence to support a conspiracy claim under §1985 against any of the Defendants.

- Plaintiff concedes that Arkansas Statutes of Limitations for battery and sexual abuse bar her claims against Dr. Cory.[14]

Additionally, because Dr. Cory was no longer employed by the University at the time suit was brought, he cannot be sued in his official capacity.[15]  All causes of action raised against Dr. Cory in his official capacity are DISMISSED.

### A.      Eleventh Amendment Sovereign Immunity

In their Motion to Dismiss, Defendants principal argument is that they are immune from suit under the Eleventh Amendment.  In particular, Defendants maintain that any claim for monetary damages is barred against all Defendants sued in their official capacity as well as against the University.

The Eleventh Amendment to the United States Constitution provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced, or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.[16]  In determining the applicability of the Eleventh Amendment to the political subdivisions of the state, this Court must,

---

[14]Arkansas Code Annotated § 16-56-104(1)(A) provides that actions for assault and battery must be brought within one year after the cause of action occurred.  Plaintiff's outrage claim against Dr. Cory has a three year statute of limitations (Ark. Code Ann. §16-56-105) and is not barred for limitations reasons.

[15]*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[16]U.S. Const. amend XI.

> [e]xamine the particular entity in question and its powers and characteristics as
> created by state law to determine whether the suit is in reality a suit against the state.
> Courts typically look at the degree of local autonomy and control and most
> importantly whether the funds to pay any award will be derived from the state
> treasury.[17]

"Each state university . . . must be considered on the basis of its own particular circumstances" in

determining if the university is a state instrumentality that enjoys the protection of the Eleventh

Amendment.[18]  As of 1985, the Eighth Circuit determined that the majority of cases addressing the

question of Eleventh Amendment immunity for public colleges and universities held that these

institutions are arms of their respective state governments and immune from suit.[19]  The *Greenwood*

Court opted not to make the final determination whether the University of Arkansas was immune

from suit and remanded the case for that determination.  The District Court held that the University

of Arkansas  is immune from suits for damages under the Eleventh Amendment.[20]  This ruling has

not been superceded.

---

[17]*Okruhlik v. University of Arkansas ex rel. May*, 255 F.3d 615, 622 (8th Cir. 2001);
*Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985).

[18]*Greenwood*, 778 F.2d at 453.

[19]*Id.* (*quoting Hall v. Medical College*, 742 F.2d 299, 301 (6th Cir. 1984) (Ohio); *see
United Carolina Bank v. Board of Regents*, 665 F.2d 553, 561 (5th Cir. 1982) (Stephen F. Austin
State University in Texas); *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1349-50 (9th
Cir. 1981) (Arizona State University), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983);
*Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir. 1976) (Mississippi State University), *cert.
denied*, 432 U.S. 910 (1977); *Prebble v. Brodrick*, 535 F.2d 605, 610 (10th Cir. 1976)
(University of Wyoming); *Long v. Richardson*, 525 F.2d 74, 79 (6th Cir. 1975) (Memphis State
University); *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir. 1971); *Walstad v.
University of Minnesota Hospitals*, 442 F.2d 634, 641-42 (8th Cir. 1971). *Contra Goss v. San
Jacinto Junior College*, 588 F.2d 96, 98 (5th Cir.), *modified*, 595 F.2d 1119 (1979); *Dyson v.
Lavery*, 417 F.Supp. 103, 108 (E.D. Va. 1976) (Virginia Polytechnic Institute and State
University); *Gordenstein v. University of Delaware*, 381 F.Supp. 718, 725 (D. Del. 1974).

[20]*Greenwood v. Ross*, 1988 WL 156151 (E.D. Ark. January 29, 1988).

The Eleventh Amendment bars federal suits against public servants in their official capacities when the "state is the real, substantial party in interest."[21]   The Eleventh Amendment, however, does not bar suits against a public servant in his official capacity when he is alleged to have committed an unconstitutional act because the State has no authority to order such acts and the official is therefore "stripped of his official or representative character."[22] Even in such cases, only injunctive relief is permitted because retroactive relief would have a direct impact on the state treasury.[23]   In the present case, with the exception of her § 1983 claims, Plaintiff requests only money damages.   Accordingly, the Eleventh Amendment bar on Plaintiff's federal and state law claims for money damages requires DISMISSAL of the causes of action against Defendants sued in their official capacity and against the University.

## B.   Qualified Immunity

The Eleventh Amendment does not bar compensatory damages[24] or punitive damages[25] against actors sued in their individual capacities.   In fact, state officers are personally liable for their conduct if sued in an individual capacity.[26]   Nevertheless, public officials are entitled to qualified

---

[21]*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,100-02.

[22]*Id*. at 102.

[23]*Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974) (holding that a suit against a state official for violation of federal law may only seek injunctive relief governing the official's future conduct); *Assad-Faltas v. University of Arkansas for Medical Sciences*, 708 F. Supp. 1026, 1029-1030 (E.D. Ark. 1989);  *Slaughter v. Levine*, 801 F.2d 288 (8th Cir. 1986).

[24]*Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974), *overruled on other grounds*, *Davis v. Sherer*, 468 U.S. 183 (1984).

[25]*Memphis Community School District v. Stachura*, 477 U.S. 299, 306, n.9 (1986).

[26]*Nix v. Norman*, 879 F.2d 429 (8th Cir. 1989).

immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[27]   Immunity serves the public interest by avoiding the social costs of subjecting public officials to the burdens of litigation on insubstantial claims.[28]  Accordingly, it provides the official with immunity from suit rather than merely a defense to liability.[29]

In the Complaint, Plaintiff alleges that "Defendants tolerated, allowed, permitted, condoned, and/or approved of inadequate policies, procedures, customs, and/or usages that resulted int he violation of Cox's civil and/or constitutional rights . . . ."[30]  Regarding Dr. Sugg and Dr. White, Plaintiff alleged that their "acts and/or omissions amounted to deliberate indifference and also constituted negligence and/or were intentional."[31]

Whether an official should be granted qualified immunity for particular conduct is a question of law.[32]  The standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether immunity is established on the face of the complaint.[33]   Although it has been held that qualified immunity should be addressed as soon as possible,[34] without the benefit of discovery, it is impossible

---

[27]*Engle v. Townsley*, 49 F.3d 1321, 1322 (8th Cir. 1995); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[28]*Id*. at 1324.

[29]*Id*. (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[30]Doc. No. 1.

[31]Doc. No. 1.

[32]*Forsyth*, 471 U.S. at 528.

[33]*Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003).

[34]*Lyles v. City of Barling*, 17 F. Supp. 2d 848, 854 (W.D. Ark. 1998).

to determine from the allegations presented whether or not qualified immunity should apply. Accordingly, Plaintiff has presented sufficient facts to overcome the motion to dismiss. This matter might be better addressed in a summary judgment motion. Even if I were to find that qualified immunity protects Defendants in their individual capacities, they would still be susceptible to prospective relief because claims for declaratory or injunctive relief are not subject to the qualified immunity defense.[35]

### C.    § 1983

Eleventh Amendment immunity for public servants sued in their official capacity is not overridden by § 1983 because Congress did not expressly so provide.[36]   Nevertheless, Defendants may still be liable to the Plaintiff for prospective relief.   In light of Eleventh Amendment immunity and the fact that its primary purpose is to protect state treasuries, prospective injunctive relief would be the only remedy available to a plaintiff for a defendant who, acting in his official capacity, allegedly commits unconstitutional actions in violation of § 1983.[37]

School district officials can be liable under § 1983 if they are deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights.[38]   The plaintiff must show that the district officials received notice of a pattern of unconstitutional acts, demonstrated deliberate

---

[35]*Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).

[36]*Quern v. Jordan*, 440 U.S.332, 338-40.

[37]*Coller v. State of Missouri, Department of Economic Development*, 965 F. Supp. 1270, 1276 (W.D. Mo. 1997);  *Pennhurst*, 465 U.S. at 102.

[38]*See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998).

indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the students.[39]

A heightened pleading standard is applied to suits seeking § 1983 damages against government officials.[40]   The pleading must contain enough specificity to give a defendant notice of the nature of the claim, so he can respond and move for judgment on the basis of qualified immunity if applicable.[41]   Because I must construe the Complaint in the light most favorable to the Plaintiff, I must reject Defendant's 12(b)(6) argument at this point.   It may be that the issue can be more  appropriately addressed in a motion for summary judgment.

Defendants next argue that they cannot be sued in their official capacity under § 1983 because they are not "persons" contemplated by § 1983 against whom a suit can be sustained for money damages.  A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.[42]   It is no different from a suit against the State itself.[43] "A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as

---

[39]*See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990).

[40]*Edgington v. Missouri Dep't of Corrections*, 52 F.3d 777, 779-80 (8th Cir. 1995).

[41]*Id.* at 779.

[42]*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Norfleet By and Through Norfleet v. State of Arkansas*, 796 F. Supp. 1194 (E.D. Ark. 1992).

[43]*See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).

actions against the State.'"[44]   State officers may also be held personally liable for money damages under § 1983 based upon actions taken in their official capacities.[45]

State officials, sued in their individual capacities, are "persons" within the meaning of §1983. Unlike official-capacity defendants -- who are not "persons" because they assume the identity of the government that employs them -- officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person."   The Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court.

It is well established in that the University is not a person within the meaning of § 1983.[46] On the other hand, although prospective relief awarded against a state officer also "implicate[s] Eleventh Amendment concerns," the interests in "end[ing] a continuing violation of federal law," outweigh the interests in state sovereignty and justify an award under § 1983 of an injunction that operates against the state's officers or even directly against the state itself.[47]

Dr. Sugg, Dr. White, and Dr. Cory can be held responsible for money damages under § 1983 in their individual capacities.   Neither the Eleventh Amendment nor the doctrine of *respondeat superior*[48] protect Defendants from liability under § 1983.   As noted above, the Plaintiff's pleadings are sufficient to withstand a 12(b)(6) motion.   The University is not considered a person under § 1983 and is, therefore, DISMISSED.

---

[44]*Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

[45]*Hafer*, 502 U.S. 21.

[46]*Regents of the University of Minnesota v. NCAA*, 560 F.2d 352, 362 (8th Cir. 1977); *Kaimowitz v. Bd. of Trustees*, 951 F.2d 765, 767 (7th Cir. 1992).

[47]*Will*, 491 U.S 58.

[48]*See Vaughn v. Greene County, Arkansas*, 438 F.3d 845, 851 (8th Cir. 2006).

### D.      Remaining Causes of Action

As an alternative argument to sovereign and qualified immunity, Defendants make a blanket argument that the remaining causes of action should be dismissed for failure to state a claim upon which relief can be granted.   In the same manner that Defendants accuse Plaintiff of making cursory arguments to support her allegations, Defendants argue that her arguments are insufficient to withstand a motion to dismiss.  As previously mentioned, it is enough at this stage of the suit for Plaintiff to allege that all Defendants were aware of the harassment and did not act quickly enough to protect her.  Accordingly, Defendants' motion to dismiss the remaining claims is DENIED.

## IV.    Conclusion

In sum, the claims against the University and Dr. Cory in his official capacity are DISMISSED.  With the exception of the § 1983 claims for prospective relief brought against Dr. Sugg and Dr. White in their official capacity, they are DISMISSED.   The U.S. and Arkansas Constitutional claims as well as the breach of fiduciary duty claim brought against Defendants in their individual capacities remain.  Also, the outrage claim brought against Dr. Cory individually remains.

IT IS SO ORDERED this 3d day of May, 2006.

/s/ Wm. R.Wilson,Jr._____
UNITED STATES DISTRICT JUDGE